Revised November 3, 1999

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-50396

_____


UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

v.

ROBERT EARL JOHNSON,

                    Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
_____
November 1, 1999

Before GARWOOD, BARKSDALE, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

    Robert Earl Johnson ("Johnson") appeals from his criminal
conviction for arson, raising an as-applied constitutional challenge
to 18 U.S.C. § 844(i).  Relying on United States v. Lopez, 514 U.S.
549 (1995), he argues that his burning of a Methodist church did not
substantially affect interstate commerce and that, as a consequence,
there was an insufficient jurisdictional basis for his arson
prosecution.  Because the district court committed plain error in
determining that a sufficient factual basis existed to support
Johnson's plea, we vacate his guilty plea and remand for further
proceedings.

Johnson was indicted for the December 1996 arson of the Hopewell United Methodist Church ("Hopewell") in violation of 18 U.S.C. § 844(i). Following an unsuccessful motion to dismiss, Johnson pleaded guilty. The district court entered judgment and sentenced Johnson to a 115-month term of imprisonment, three years supervised release, and $89,227 restitution.

To support Johnson's plea, the Government offered a written Factual Basis, detailing Johnson's offense. This Factual Basis contained the following information.[1] In December 1996, an arson fire destroyed the Hopewell United Methodist Church and its contents. Johnson, who lived next door to the church, admitted that he had set the fire at the church in an effort to cover up past burglaries of Hopewell. Church Mutual Insurance Company, located in Merrill, Wisconsin, insured the church building and its contents. As a result of the fire, Church Mutual Insurance Company paid a claim of over $89,000 to Hopewell. Before the December 1996 blaze, Hopewell was a member of the Texas Annual Conference of the United Methodist Church ("Texas Annual Conference"). As a member church, Hopewell contributed approximately sixteen percent of the money that it collected from its congregation to the Texas Annual Conference. The Texas Annual Conference forwards the majority of its contributions to the United Methodist Church's General Counsel on Finance and

---

[1] Johnson made no material objection to any of the facts averred therein.

Administration in Evanston, Illinois.  The General Counsel then distributes these funds to various ministries throughout the world, to the denomination's seminaries, to the Black College Fund, and other efforts across the United States.

## II

### A

As a general rule, a valid guilty plea waives all non-jurisdictional defects in the proceedings against a defendant. See United States v. Andrade, 83 F.3d 729, 731 (5th Cir. 1996) (per curiam).  A defendant, however, may preserve a claim for appellate review by entering a conditional plea under Federal Rule of Criminal Procedure 11(a)(2).   See United States v. Bell, 966 F.2d 914, 915 (5th Cir. 1992).  "Failure to designate a particular pretrial issue in the written plea agreement generally forecloses appellate review of that claim."  Id. at 916.

To establish a violation under the arson statute, 18 U.S.C. § 844(i), the government must demonstrate that a person maliciously damaged or destroyed by means of fire a "building, vehicle, or other personal property used in interstate . . . commerce or in any activity affecting interstate . . . commerce."  18 U.S.C. § 844(i). Section 844(i)'s interstate commerce requirement "while jurisdictional in nature, is merely an element of the offense, not a prerequisite to subject matter jurisdiction."  United States v. Rea, 169 F.3d 111, 113 (8th Cir. 1999); cf. United States v. Robinson, 119

F.3d 1205, 1212 n.4 (5th Cir. 1997) (explaining that the Hobbs Act's interstate commerce element is not jurisdictional in the sense that "a failure of proof would divest the federal courts of adjudicatory power over the case"). Accordingly, we find that Johnson, in entering an unconditional plea of guilty before the district court, waived his as-applied constitutional challenge to § 844(i). As a consequence, Johnson's appeal can be maintained only if construed as a challenge to the sufficiency of the factual basis for the interstate commerce element of the arson crime to which he pleaded guilty. See United States v. Dayton, 604 F.2d 931, 936-38 (5th Cir. 1979) (en banc) (holding that, notwithstanding a guilty plea, a defendant may appeal a district court's finding of a factual basis for the plea on the ground that the facts set forth in the record do not constitute a crime).

B

A trial court cannot enter judgment on a plea of guilty unless it is satisfied that there is a factual basis for the plea. See Fed. R. Crim. P. 11(f). "The purpose underlying this rule is to protect a defendant who may plead with an understanding of the nature of the charge, but 'without realizing that his conduct does not actually fall within the definition of the crime charged.'" United States v. Oberski, 734 F.2d 1030, 1031 (5th Cir. 1984) (quoting United States v. Johnson, 546 F.2d 1225, 1226-27 (5th Cir. 1977)). This factual basis must appear in the record and must be sufficiently specific to

4

allow the court to determine that the defendant's conduct was "within the ambit of that defined as criminal." Id.

We generally regard a district court's acceptance of a guilty plea as a factual finding to be reviewed under the clearly erroneous standard. See United States v. Rivas, 85 F.3d 193, 194 (5th Cir. 1996). Johnson, however, does not contest the findings of fact or other Rule 11 procedures followed by the district court. Instead, he presents a "plain, straightforward issue of law: is the undisputed factual basis sufficient as a matter of law to sustain his plea." United States v. Ulloa, 94 F.3d 949, 955 (5th Cir. 1996). Because Johnson did not present this claim to the district court and because his appeal raises an issue of law for which "we need [not] be satisfied that findings of fact regarding the factual basis are not clearly erroneous," we review for plain error. See id. Under the plain error standard, an appellant must show: (1) that there was error; (2) that it was clear and obvious; and (3) that it affected the appellant's substantial rights. See United States v. Olano, 507 U.S. 725, 730-36 (1993). Even when these criteria are satisfied, we exercise our discretion to correct only those errors that "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." Id. at 732.

C

Johnson argues that the Hopewell United Methodist Church was not a building used in any activity substantially affecting interstate

commerce as required by § 844(i).  In doing so, he attempts to engraft into individual § 844(i) prosecutions the Lopez requirement that an intrastate activity must substantially affect interstate commerce to be subject to congressional regulation under the Commerce Clause.  See Lopez, 514 U.S. 549, 559.

Johnson miscontrues the proper standard to be applied in assessing the sufficiency of the interstate commerce nexus. Johnson's individual act of arson need not have a substantial impact on interstate commerce, so long as arsons of property used in interstate commerce or in activities affecting interstate commerce, in the aggregate, substantially impact interstate commerce.  See Lopez, 514 U.S. at 561 ("[O]ur cases uphold[] regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[] interstate commerce."); Maryland v. Wirtz, 392 U.S. 183, 196 n.27 (1968), overruled on unrelated grounds by, National League of Cities v. Usery, 426 U.S. 833, 854 (1976), overruled by, Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 547 (1985) ("[W]here a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.").  In United States v. Robinson, we considered the constitutionality of the Hobbs Act, 18 U.S.C. § 1951(a), in the wake of the Supreme Court's Lopez decision.  We found that the Hobbs Act's enactment was a permissible exercise of

6

the congressional power to regulate commerce among the states.  See 119 F.3d at 1208.  In reaching this conclusion, we explicitly stated that, "We think Lopez makes clear that legislation concerning an intrastate activity will be upheld if Congress could rationally have concluded that the activity, in isolation or in the aggregate, substantially affects interstate commerce."  Id. at 1211-12.  Because the substantiality requirement "applies to the class of cases prosecuted in the aggregate[,] in any particular case, proof of a slight effect on interstate commerce suffices."  Id. at 1212.

Since Robinson, we have not specifically addressed the question of whether proof of a slight effect on interstate commerce suffices in the context of § 844(i) prosecutions.[2]  Though in agreement with Judge Garwood's point, in his special concurrence, that Robinson is not binding on this court, the aggregation principle is generally applicable, and the Hobbs Act and § 844(i) are strikingly similar;[3] therefore, the reasoning underlying our holding in Robinson applies with equal force to the instant action.

---

[2]    The pre-Robinson case of United States v. Corona, 108 F.3d 565 (5th Cir. 1997), noted that "[t]he consequences of arson are typically local, and we have traditionally left it to the states to determine the appropriate penalty."  Id. at 570.  Although it suggested that Lopez might call into question earlier cases interpreting § 844(i), Corona did not resolve the question of whether a slight effect on interstate commerce--substantial only in the aggregate--suffices for purposes of the interstate commerce requirement.  See id.

However, we also observe that Judge Higginbotham's dissent on behalf of half of the equally divided en banc court in United States v. Hickman, 179 F.3d 230, 242 (5th Cir. 1999) argues in dicta that the government could use aggregation–albeit under the dissent's more narrow theory of aggregation–to satisfy the jurisdictional element of a nexus with interstate commerce in typical prosecutions under § 844(i).

[3]    Section 844(i), like the Hobbs Act, contains an explicit interstate commerce requirement.

7

Judge Garwood disagrees with the conclusion that aggregation is here available; in his view, aggregation cannot apply because § 844(i) neither regulates an interstate market or economic activity nor are the individual instances of arson related to each other or any specific regulatory scheme. Aggregation is not so narrowly constrained. Just as the greater power includes the lesser, see 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 511 (1996) ("[W]e do not dispute the proposition that greater powers include lesser ones[.]"); Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico, 478 U.S. 328, 345 (1986) ("In our view, the greater power to completely ban casino gambling necessarily includes the lesser power to ban advertising of casino gambling[.]"), the lesser power here necessarily implies the greater. Judge Garwood concedes that Congress has the power to regulate arsons in a particular economic market, for instance, arsons of abortion clinics; that power can derive only from Congress' more extensive constitutional grant of the power to regulate interstate commerce generally.

"Congress has the power to protect interstate commerce from intolerable or even undesirable burdens." Quill Corp. v. North Dakota, 504 U.S. 298, 318 (1992) (quoting Commonwealth Edison Co. v. Montana, 453 U.S. 609, 637 (1981) (White, J., concurring); see also United States v. Green, 350 U.S. 415, 420 (1956) (upholding the Hobbs Act because "the legislation is directed at the protection of interstate commerce against injury[.]"); Prudential Ins. Co. v.

8

Benjamin, 328 U.S. 408, 434 (1946) ("[The Commerce Clause's] scope enables Congress not only to promote but also to prohibit interstate commerce[.]"). Thus the power of Congress to protect or promote individual markets derives from its power likewise to foster and encourage interstate commerce generally. Section 844(i) is a reflection of Congress' clear intent to protect and promote interstate commerce in general.

This does not mean, however, that aggregation obliterates, or even circumscribes materially, our federal system. In order to aggregate, the government must show that the arson has "an explicit connection with or effect on interstate commerce." Lopez, 514 U.S. at 562. A "speculative" or "attenuated" connection, however, will not suffice to demonstrate the nexus with interstate commerce. United States v. Collins, 40 F.3d 95, 99, 101 (5th Cir. 1994); see also United States v. Corona, 108 F.3d 565, 570 (5th Cir. 1997) (rejecting "speculative" effects on interstate commerce as insufficient).

Here, the Government identifies four facts that it contends support a determination that the Hopewell Church was a building used in or affecting interstate commerce or used in any activity affecting interstate commerce: (1) Hopewell's membership in the Texas Annual Conference, to which Hopewell annually contributed funds raised from its members and other sources; (2) the Conference's forwarding of the majority of those funds to the United Methodist

9

Church's national office in Illinois; (3) the national organization's distribution of those funds to various missionary activities, seminaries, and institutions of higher education; and (4) an out-of-state insurer's payment of a claim for more than $89,000 to Hopewell.[4] We find that these facts do not provide a sufficiently specific factual basis from which the district court could have determined that Johnson's arson was within the scope of 18 U.S.C. § 844(i). By accepting Johnson's plea without an adequate factual basis, the district court committed plain error.

The Government failed to present to the district court any information clarifying the nature of the relationship between Hopewell and the Texas Annual Conference or between Hopewell and the national United Methodist Church. In particular, the record contains no information from which we can discern that Hopewell was an integral part of a national body with activities explicitly connected to or affecting interstate commerce. Merely being a dues-paying member of an organization that funds a national body does not satisfy § 844(i)'s interstate commerce element. Thus, Hopewell's membership in the Texas Annual Conference does not establish an explicit connection or effect on interstate commerce.

The out-of-state insurer's payment of the $89,000 claim also

---

[4] In its appellate brief, the Government references several additional facts tending to show an interstate commerce nexus. That information, however, was not part of the factual basis presented by the Government to the district court at the time of Johnson's plea and therefore could not properly be relied upon by the district court in determining whether or not to accept Johnson's guilty plea.

does not establish the interstate commerce element.  Critical to our determination in Robinson that "robberies affecting interstate commerce are precisely the sort of acts 'that might, through repetition elsewhere, substantially affect . . . interstate commerce'" was our recognition that the charged robberies in that case had an explicit connection with and effect upon interstate commerce.  Robinson, 119 F.3d at 1208 (quoting Lopez, 514 U.S. at 567).  We explained that the stores targeted by Robinson and his gang were robbed of thousands of dollars and "that the robberies impaired [the stores'] ability to cash out-of-state checks and to restock goods shipped from other states."  Id. at 1215.  Unlike the concrete effects of the robberies in Robinson, an out-of-state company's payment of an insurance claim does not amount to an explicit connection or effect on interstate commerce to which the aggregation principle would apply.  At most, the impact on interstate commerce of Hopewell's filing of a claim and its payment by an out-of-state insurer is speculative.  To find otherwise would be to federalize the arson of any building, vehicle, or other personal property insured by an out-of-state company.  Accordingly, we hold that the factual basis presented to the district court does not support a finding that Johnson's December 1996 arson of the Hopewell United Methodist Church resulted in the damage or destruction of a building used in interstate commerce or in any activity affecting interstate commerce.

11

III

For the aforementioned reasons, we conclude that the district court committed plain error in accepting Johnson's plea of guilty. Because the factual basis presented to the district court fails to establish the interstate commerce element of 18 U.S.C. § 844(i), we exercise our discretion under <u>Olano</u>, 507 U.S. at 732, to vacate Johnson's guilty plea and remand for further proceedings consistent with this opinion.

GARWOOD, Circuit Judge, with whom BARKSDALE, Circuit Judge, joins, specially concurring:

Application of 18 U.S.C. § 844(i) continues to trouble this Court. *See, e.g., United States v. Corona*, 108 F.3d 565, 568-71 (5th Cir. 1997); *United States v. Nguyen*, 117 F.3d 796, 798 and dissenting opinion at 798-800 (5th Cir.), *cert. denied* 118 S.Ct. 455 (1997).

While I concur in the result here, and agree with Judge Benavides' factual analysis reflecting that it was plain error for the district court to conclude that the factual basis for the plea reflected a constitutionally adequate relation to interstate commerce, I disagree with the aggregation analysis in Judge Benavides' opinion.

In *United States v. Lopez*, 115 S.Ct. 1624 (1995), the Supreme Court set out "three broad categories of activity that Congress may regulate under its commerce power," as follows:

> "First, Congress may regulate the use of the channels of interstate commerce . . . . Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. . . . [Third] Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *Jones & Lauglin Steel*, 301 U.S. at 37, 57 S.Ct. at 624, i.e., those activities that substantially affect interstate commerce. *Wirtz, supra* at 196, n.27, 88 S.Ct. at 2024, n.27." *Lopez* at 1629-30.

It is evident that we are here dealing with the third *Lopez* category, the only category as to which the "substantially affect interstate commerce" requirement and the concept of aggregation are

relevant.[5]

I agree with the position taken by Judge Higginbotham, joined in by seven other judges of this Court, in *United States v. Hickman*, 179 F.3d 230 (5th Cir. 1999) (en banc; evenly divided court), stating that for purposes of *Lopez*'s third category:

> ". . . substantial effects upon interstate commerce may not be achieved by aggregating diverse, separate individual instances of intrastate activity where there is no rational basis for finding sufficient connections among them.  Of course, Congress may protect, enhance, or restrict some particular interstate economic market, such as those in wheat, credit, minority travel, abortion service, illegal drugs, and the like, and Congress may regulate intrastate activity as part of a broader scheme."  *Id*. at 231.

In *Lopez* this Court refused to countenance the government's attempt to salvage the Gun Free School Zones Act (18 U.S.C. § 822(q)) by an aggregation argument, *viz*:

> "The government seeks to rely on the rule that '[w]here the *class of activities* is regulated and that *class* is within the reach of the federal power, the courts have no power "to excise as trivial, individual instances" of the class.'  This theory has generally been applied to the regulation of a class of activities the individual

---

[5]Appellant was convicted of violating 18 U.S.C. § 844(i) which proscribes arson of "any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."  It is evident that the church building that appellant burned was not "used in interstate or foreign commerce," and on appeal the Government merely argues that "Defendant's arson of the Hopewell United Methodist Church was a crime under Section 844(i) because the Church building was used in an activity affecting interstate commerce" and that the burned church was "a building used in an activity affecting commerce."  Judge Benavides' opinion does not suggest that either the first or second *Lopez* categories are involved or that the church building was "used in interstate or foreign commerce."

instances of which have an interactive effect, usually because of market or competitive forces, on each other and on interstate commerce.  A given local transaction in credit, or use of wheat, because of national market forces, has an effect on the cost of credit or price of wheat nationwide.  Some such limiting principles must apply to the 'class of activities' rule, else the reach of the Commerce Clause would be unlimited, for virtually all legislation is 'class based' in some sense of the term." *Lopez*, 2 F.3d at 1367 (quoting *Perez*, 402 U.S. at 153-54, 91 S.Ct. at 1361; *Wirtz*, 392 U.S. at 192-94, 88 S.Ct. at 2022).

The Supreme Court in *Lopez* likewise rejected the government's aggregation argument, stating, in language fully applicable to section 844(i), as follows:

"Section 922(q) is not an essential part of a larger regulation of economic activity, in which the *regulatory scheme* could be undercut unless the intrastate activity were regulated.  It cannot, *therefore*, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce."  *Id.*, 115 S.Ct. at 1631 (emphasis added).

In *United States v. Bird*, 124 F.3d 667 (5th Cir. 1997), this Court quoted with approval the above set out passage from our *Lopez* opinion (124 F.3d at 676-77) and went on to say:

"Unless there is something that relevantly ties the separate incidents and their effects on interstate commerce together, aside from the desire to justify congressional regulation, the government's 'class of activities' interpretation would transform Justice Breyer's *Lopez* dissent into the constitutional rule." *Bird* at 677.

Arsons under section 844(i) are simply not a meaningful "class of activities" suitable for aggregation.  Section 844(i) is not limited to arsons affecting any particular class of business or any

15

particular national market but extends, without differentiation, to all arsons of personal as well as business property, so long as the property is "used . . . in any activity affecting interstate commerce," which would include, for example, the cowboy's boots.  To allow such aggregation would necessarily mean that section 844(i) is not any kind of a regulatory scheme of any interstate or national market.  The act's focus would be on the crime, arson—not on any effect on interstate commerce.  Indeed, although section 844(i) requires that the fire be one which "damages" "property used . . . in any activity affecting interstate or foreign commerce," its terms contain no requirement that the fire or the damage to the property have *any* effect on interstate commerce (or on the activity affecting interstate commerce in which the property is used).  Moreover, there is no requirement in section 844(i) that the "activity" be a commercial or economic one.[6]

Application of the aggregation principle to this case, which involves no effort to regulate any interstate market nor any related regulatory scheme, in effect gives Congress the Commerce Clause power to regulate all arsons, a result not supported by the language of the Constitution or the intent of its framers.  Judge Benavides' approach

---

[6]*Cf. Lopez* at 1633: "We do not doubt that Congress has authority under the Commerce Clause to regulate numerous *commercial* activities that substantially affect interstate commerce and also affect the educational process" (emphasis added).  Surely the nation's churches are no more within the reach of the Commerce Clause than its educational processes.

of essentially unlimited aggregation would allow Congress – wholly apart from any scheme of regulation of any "commerce among the several states," – to enact a preemptive national criminal and civil code applicable to <u>all</u> conduct and activity of a purely local nature. This is so because every individual action no matter how local will ultimately have some at least minute interstate affect,[7] and it will always and inevitably be the case that the aggregration of <u>all</u> such conduct would substantially affect interstate commerce.  <u>If</u> Congress has that power then it doubtless also has the "lesser" power to regulate all arsons; but to conclude that Congress has such power is necessarily to conclude that the commerce power is essentially unlimited, contrary to *Lopez* as well as to the Constitution's basic federal scheme reaffirmed in the Tenth Amendment.

Judge Benavides would slightly soften this blow by holding that instances of local activity may not be aggregated for purposes of the substantial affect requirement of *Lopez's* third category unless their <u>individual</u> affect on interstate commerce is more than "speculative" or "attenuated," notwithstanding that <u>if</u> aggregated their total interstate affect would be substantial.  No explanation is given of why aggregation is improper in such instances – notwithstanding a substantial affect if aggregated – but nevertheless is proper in

---

[7]*See, e.g.*, *Lopez*, 115 S.Ct. at 1633, quoting approvingly from Justice Cardozo's concurring opinion in *A.L.A. Schecter Poultry Corp. v. U.S.*, 55 S.Ct. 837, 853 (1935), "'A society such as our "is an elastic medium which transmits all tremors throughout its territory; the only question is of their size"'."

17

instances involving unrelated local noncommercial activities immaterial to any interstate regulatory scheme whose aggregated interstate affect may even be less than the aggregated interstate affect of the instances Judge Benavides would refuse to aggregate. And, if Judge Benavides' approach is more than purely cosmetic and rhetorical, it is in substantial tension with *Lopez's* recognition of the propriety of aggregation where the challenged rule forms "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." Id. at 1631. In such a situation, individual activities each of which may be "trivial by itself" or "*de minimis*," may be aggregated. *See Lopez* at 1628, 1629.[8] It is difficult to see a meaningful difference between affects which are "trivial" or "*de minimis*" and those which are "speculative" or "attentuated;" and Judge Benavides' opinion affords no assistance in this respect. Finally, Judge Benavides' open-ended aggregation theory, bounded by no principled limits, in substance does away with the substantially affect requirement of *Lopez's* third category – for if essentially anything and everything can be aggregated then

---

[8]*Lopez* at 1628 notes that in *Wickard v. Filburn*, 63 S.Ct. 82 (1941) "Filburn's own contribution to the demand for wheat may have been trivial by itself," and, at 1631, quotes approvingly from the statement in *Maryland v. Wirtz*, 88 S.Ct. 2017, 2024 n.27 (1968), referring to the decision there and in *Wickard*, that "[t]he Court has said only that where *a general regulatory statute bears a substantial relation to commerce*, the de minimis character of individual instances arising under that statute is of no consequence" (emphasis supplied by *Lopez*).

18

substantiality will always be satisfied. And, it likewise renders wholly meaningless *Lopez's* special treatment of enactments which form "an essential part of a larger regulation of economic activity, in which the regulatory scheme would be undercut unless the intrastate activities were regulated" as to which the thus regulated intrastate activities are to be "viewed in the aggregate" for purposes of satisfying the third category's substantiality requirement. Id. at 1631.

Section 844(i) is not a regulation of any interstate market or economic activity and the individual instances of arson which it addresses are wholly unrelated to each other or to any particular regulatory scheme or purpose other than the prevention of arson. Aggregation is hence improper.[9]

I recognize that language in this Court's opinion in *United States v. Robinson*, 119 F.3d 1205 (1997), supports the position taken

---

[9]And, as we observed in *Bird*, 124 F.3d at 682, n.15:

"Certainly when Congress is regulating *inter* state commercial activity, its reason for doing so is immaterial. But where, as here, Congress is regulating purely *intra* state, noncommercial activity because of its *substantial affect* on interstate commerce, the purpose must in fact be to regulate interstate commerce. '*Let the end* be legitimate, let it *be within the scope of the constitution*, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the *letter and spirit* of the constitution, are constitutional.' *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819) (emphasis added). *See also id*. at 423 ('should Congress, under the pretext of executing its powers, pass laws for the accomplishment of objects not entrusted to the government,' Supreme Court would be bound to hold law invalid)."

19

by Judge Benavides here.  I disagree with that aspect of *Robinson*, and I would not extend *Robinson*, a Hobbs Act case, to the instant section 844(i) prosecution.[10]

Accordingly, although I concur in the result I am unable to entirely join Judge Benavides' opinion.

---

[10]I observe that the terms of the Hobbs Act, 18 U.S.C. § 1951, at least require that the there proscribed *robbery* be one which "affects [interstate] commerce," while, as I have noted, section 844(i) has no such requirement respecting its proscribed *arson* of property used in any activity affecting interstate commerce.