IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 15, 2008

Charles R. Fulbruge III
Clerk

No. 06-20248

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JERRY ALFRED FUTCH, JR

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CR-511

Before GARWOOD and CLEMENT, Circuit Judges.[*]

PER CURIAM:[**]

Jerry Alfred Futch, Jr. pleaded guilty to one count of false reporting in violation of 7 U.S.C. § 13(a)(2) and agreed to waive all non-jurisdictional appeals. Futch was sentenced to fifty-seven months of imprisonment under the United States Sentencing Guidelines. He appeals the factual and jurisdictional bases for his plea. Futch also raises issues regarding the procedures used in his

---

[*] Judge Elrod was a member of the panel, but did not participate in this decision. The case is being decided by a quorum. 28 U.S.C § 46(d).

[**] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentencing, which are barred by the waiver of appeal in his plea agreement. Finding no error, we affirm the plea agreement and sentence.

## I.  FACTS AND PROCEEDINGS

Futch was a natural gas trader for Reliant Energy ("Reliant") in Houston, Texas.  On November 29, 2000, Futch responded by e-mail to a survey conducted by the Washington, D.C.-based natural gas industry publication Inside FERC Gas Market Report ("Inside FERC").  Futch reported that Reliant had entered into "twelve fixed-price baseload trades of natural gas" at "Transco Zone 6" on November 28, 2000.  At the time he sent the e-mail, Futch knew that Reliant had not entered into any of the trades at the prices and volumes he reported.

The survey to which Futch falsely responded was a monthly survey performed by Inside FERC to learn the prices at which energy companies bought and sold natural gas.  Inside FERC used this data to calculate an index price for natural gas.  Energy companies like Reliant traded natural gas at prices tied to the index price.  Other energy companies, including public utilities, purchased natural gas under long-term contracts tied to the index price.  Owners of natural gas mineral rights (including, for example, the State of Texas) received royalties tied to the index price calculated by Inside FERC and other energy publications. Index prices also affected the price of natural gas futures contracts traded on the New York Mercantile Exchange ("NYMEX").

Natural gas travels in interstate commerce through a national pipeline system.  Because contracts for future delivery of natural gas are traded on the NYMEX, natural gas is a commodity under the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 et seq.

On November 17, 2004,  Futch was indicted on four counts of knowingly delivering inaccurate reports concerning market information that tended to affect the price of natural gas, in violation of 7 U.S.C. § 13(a)(2).  On June 9, 2005, Futch filed two motions to dismiss the indictment, arguing that § 13(a)(2)

was unconstitutionally vague and overbroad.[1] On June 16, 2005, Futch pleaded guilty to one count of false reporting under § 13(a)(2) and agreed to waive his right to appeal "the sentence imposed or the manner in which it was determined." Futch also waived his right "to contest his conviction or sentence by means of any post-conviction proceeding."

Prior to sentencing, Futch moved to dismiss the indictment because of prosecutorial misconduct. He twice moved for an evidentiary hearing regarding the loss calculations in his presentence report ("PSR"). The district court denied Futch's motions. Following both parties' submission of expert reports concerning the amount of loss caused by Futch's actions, the district court adopted the recommendations of the PSR and sentenced Futch to fifty-seven months of imprisonment, the upper end of the Guidelines range for his offense. Futch now appeals.

## II. STANDARD OF REVIEW

We review the district court's determination that Futch's plea agreement had an adequate factual basis for plain error, because Futch presents "a plain, straightforward issue of law: is the undisputed factual basis sufficient as a matter of law to sustain his plea." United States v. Johnson, 194 F.3d 657, 660 (5th Cir. 1999), vacated on other grounds, 530 U.S. 1201 (2000). We review the validity of Futch's appeal waiver de novo. United States v. Burns, 433 F.3d 442, 445 (5th Cir. 2005). Futch's guilty plea does not waive his jurisdictional challenges, which include the "claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." United States v. Broce, 488 U.S. 563, 575 (1989) (internal quotations omitted). We review Futch's constitutional challenges to § 13(a)(2) and his challenge to the district court's

---

[1] On July 11, 2005, Futch filed a motion requesting that the court set a deadline for the government to respond to his June 9 motions. On July 18, Futch filed a motion to withdraw his July 11 motion. The district court granted the motion to withdraw on July 20, 2005.

statutory interpretation de novo. United States v. Santos-Riviera, 183 F.3d 367, 369 (5th Cir. 1999).

## III. DISCUSSION

### A. Voluntariness of the plea agreement

Futch's guilty plea and waiver of appeal foreclose all non-jurisdictional challenges to his conviction and sentence. United States v. Owens, 996 F.2d 59, 60 (5th Cir. 1993) (citing United States v. Jennings, 891 F.2d 93, 95 (5th Cir. 1989)). However, Futch's waiver of appeal does not bar claims based on the voluntariness of his plea. United States v. Finney, 225 F. App'x 246, 246 (5th Cir. 2007) (per curiam) (unpublished).

"Due process requires that a guilty plea be a knowing and voluntary act; the defendant must be advised of and understand the consequences of the plea." United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990). In this Circuit, "[a]s long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequences." United States v. Santa Lucia, 991 F.2d 179, 180 (5th Cir. 1993) (internal quotations omitted).

At his rearraignment, the district court reviewed the plea agreement with Futch, including the waiver-of-appeal provisions. Futch stated that he understood that his plea waived any non-jurisdictional challenges to his conviction. Futch also stated that he understood that the statutory maximum penalty for his crime was a five-year prison term and a $500,000 fine. Futch and his attorney also signed an addendum to the plea agreement attesting that his attorney had "fully explained" Futch's rights and reviewed the applicable sentencing guidelines with him. Futch and his attorney both attested that Futch's decision to enter into the plea agreement was "an informed and voluntary one." We hold that his plea agreement was knowing and voluntary and that Futch has waived all non-jurisdictional challenges to his conviction and sentence.

B.    Basis for the plea agreement

"A guilty plea does not waive the right of a defendant to appeal a district court's finding of a factual basis for the plea on the ground that the facts set forth in the record do not constitute a federal crime."  United States v. Reasor, 418 F.3d 466, 470 (5th Cir. 2005).  Futch was indicted under 7 U.S.C. § 13(a)(2), which makes it a felony for

> [a]ny person . . . knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce . . . false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce . . . .

To state a claim for false reporting, the prosecution must allege "(1) that a defendant knowingly delivered market reports or market information through interstate commerce, (2) that the information was knowingly false or misleading; and (3) that the information affected or tended to affect the price of a commodity in interstate commerce." United States CFTC v. Atha, 420 F. Supp. 2d 1373, 1380 (N.D. Ga. 2006) (citing United States v. Valencia, 394 F.3d 352, 356–57 (5th Cir. 2004)).  At the rearraignment, Futch admitted that he knowingly delivered false sales reports to Inside FERC via e-mail sent from Texas to Washington, D.C., that he knew that this information was false, that he knew that this information tended to affect the index price published by Inside FERC, and that he knew that the index price tended to affect the price of natural gas.  He also admitted that natural gas was a "commodity" under the CEA.

Futch argues that the factual basis for his plea was deficient, because the natural gas "spot" or "swap" transactions in which Futch engaged are exempted from the oversight of the Commodity Futures Trade Commission ("CFTC"), the regulatory body charged with enforcing the CEA.  Futch argues that the CEA should never have been applied to him.  Futch cites to the legislative history of the CEA, statutory language in 7 U.S.C. § 2(g)-(i), and a 1993 CFTC Final Order

exempting certain energy markets from CFTC regulation. 7 U.S.C. § 2(g)-(h); Exemption for Certain Contracts Involving Energy Products, 58 Fed. Reg. 21286, 21294–95 (May 20, 1993) [hereinafter 1993 Final Order].

Futch's argument is without merit because the statutory and regulatory provisions he cites do not apply to his conduct. Subsections 2(g) and 2(h) of the CEA were part of the Commodity Futures Modernization Act, which became law in December 2000, after the offense conduct at issue here.[2]

Even if these subsections had been in force when Futch sent his false report to Inside FERC, they would not exonerate him. Subsections 2(g)-(i) exempt "agreement[s], contract[s] or transaction[s]" in, inter alia, the natural gas markets, from CFTC oversight. 7 U.S.C. §§ 2(g), (h)(1), (i)(1). Futch was not indicted for entering into an "agreement, contract or transaction," but for distributing false market information under § 13(a)(2). The federal courts which have evaluated § 13(a)(2)'s false reporting offense have concluded that it extends to "any commodity in interstate commerce" and is not limited to futures contracts regulated by the CFTC. See, e.g., United States CFTC v. Reed, 481 F. Supp. 2d 1190, 1198 (D. Colo. 2007); United States v. Reliant Energy Servs., Inc., 420 F. Supp. 2d 1043, 1061 (N.D. Cal. 2006). Federal courts have found that "false reporting of market information concerning natural gas and attempted manipulation of natural gas price indices does not implicate an agreement, contract or transaction" and thus does not come under the exceptions in 7 U.S.C. § 2(g)-(h). Reed, 481 F. Supp. 2d at 1198 (internal quotations omitted); Atha, 420 F. Supp. 2d at 1380; United States CFTC v. Bradley, 408 F. Supp. 2d 1214, 1219 (N.D. Okla. 2005); United States v. Valencia, No. H-03-024, 2003 U.S. Dist. LEXIS 15264, at *32–36 (S.D. Tex. Aug. 25, 2003), vacated in part on other

---

[2] According to the Library of Congress records, the Commodity Futures Modernization Act, H.R. 5660, was incorporated by reference in the conference report to H.R. 4577. H.R. 4577, the Consolidated Appropriations Act of 2001, became Public Law 106-554 on December 21, 2000.

grounds, 2003 U.S. Dist. LEXIS 24327 (S.D. Tex. Nov. 13, 2003), rev'd on other grounds, 394 F.3d 352 (5th Cir. 2004).

The 1993 Final Order explicitly states that § 13(a)(2) continues to apply to the energy markets that are otherwise exempted from the CEA by the order. 58 Fed. Reg. at 21291. Because the statutory and regulatory language is clear, we need not consider the legislative history. Valencia, 394 F.3d at 355 n.2. We hold that § 13(a)(2) applies to Futch's conduct as charged in the indictment and that the district court did not err when it found that Futch's plea agreement had an adequate factual basis.

C.     Jurisdictional challenges to the plea agreement

(1)     Unconstitutional overbreadth

Futch argues that § 13(a)(2) is unconstitutionally overbroad because it is a limitation on speech which is not narrowly tailored to promote the interests set out in the findings and purpose section of the CEA. See 7 U.S.C. § 5. A prior panel of this Court has held that § 13(a)(2) is not constitutionally overbroad because it only criminalizes knowingly false speech, which is not constitutionally protected speech. Valencia, 394 F.3d at 355–57; accord Reed, 481 F. Supp. 2d at 1198–99; see also Colson v. Grohman, 174 F.3d 498, 507 (5th Cir. 1999) ("[I]ntentional or reckless falsehood, even political falsehood, enjoys no First Amendment protection."). Futch's overbreadth argument is foreclosed by Valencia.

(2)     Unconstitutional vagueness

Futch argues that § 13(a)(2) contains terms that are too vague to support a criminal conviction. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). Vagueness challenges to statutes which, like § 13(a)(2),

"do not involve First Amendment freedoms" should be "examined in the light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550 (1975).

Futch argues that the terms "any person," "market," "information and conditions," "price," "tends to affect," "for transmission" and "commodity" are unconstitutionally vague. Futch argues that the term "any person" is vague because it could be interpreted either to include "any person" already regulated by the CEA, or "any person" who makes a statement about any commodity in interstate commerce. We reject this argument. The term "person" is defined broadly in 7 U.S.C. § 1a(28) to include "individuals, associations, partnerships, corporations, and trusts." Section 13(a)(1) is limited to "[a]ny person registered or required to be registered" under the CEA. The contrast between the limitations in § 13(a)(1) and the use of the phrase "any person" in § 13(a)(2) clearly indicates that Congress intended to include a broader class of persons under § 13(a)(2). See Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotations omitted)). The phrase "any person" as it is used in § 13(a)(2) is not vague.

Futch argues that the term "market" is vague because it could (as the government urges here) refer to any market for a commodity in interstate commerce, or (as Futch urges) refer only to markets regulated under the CEA. We first note that the statute only applies to "market information" that "affect[s] or tend[s] to affect the price of any commodity in interstate commerce." The term "market" is thus limited by the other terms of § 13(a)(2). Further, looking at the statutory language in light of the facts of Futch's plea, the term "market information" is not vague because Futch's false statements about the time, place,

price, and volume of Reliant's natural gas trades clearly qualified as "market information" under almost any definition of the term. See Mazurie, 419 U.S. at 550 ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.").

Futch argues that the terms "information" and "conditions" are vague because they overlap. We reject this argument because the fact that "market information" and "market conditions" may overlap does not make them unconstitutionally vague. See United States v. Batchelder, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").

Futch argues that the term "price" is overbroad and should be read as "market price" in light of other sections of the statute, such as 7 U.S.C. §§ 9 and 2(h)(2)(C), which use the term "market price." However, Futch has not established that judicially inserting the word "market" would add clarity to § 13(a)(2). In the context of a natural gas contract, this Court has stated that the "[m]arket price is the price that is actually paid by buyers for the same commodity in the same market." Shamrock Oil & Gas Corp. v. Coffee, 140 F.2d 409, 410 (5th Cir. 1944); see also Cargill, Inc. v. Hardin, 452 F.2d 1154, 1166 (8th Cir. 1971) (construing 7 U.S.C. §§ 9 and 13 and finding that the "market" for a commodity is "composed of products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered" (internal quotations omitted)). Given this broad definition, adding the term "market" to modify "price" would not significantly alter the scope of § 13(a)(2). In addition, as with the term "market information" above, Futch has not shown that § 13(a)(2) was vague in light of the facts of this case. See Mazurie, 419 U.S. at 550. Futch judicially admitted that his false reports tended to affect the index price of natural gas and that the index price affected

the price of gas in a wide variety of markets, including the price of natural gas futures on the NYMEX.

Futch argues that the term "tends to affect" is vague. He cites to Mattern v. Eastman Kodak Co., where this Court referred to actions under Title VII that "would tend to deprive" employees of "opportunities" as "vague harms." 104 F.3d 702, 709 (5th Cir. 1997) (discussing 42 U.S.C. § 2000e-2(a)(1), (2)), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 126 S.Ct. 2405 (2006). The Mattern court did not find, however, that it was impermissible for Congress to impose civil penalties for inflicting these "vague harms" on their employees. Id. Futch also cites to Justice Kennedy's dissent in Hill v. Colorado, which states that "[i]n the context of a law imposing criminal penalties for pure speech, 'protest' is an imprecise word; 'counseling' is an imprecise word; 'education' is an imprecise word. No custom, tradition, or legal authority gives these terms the specificity required to sustain a criminal prohibition on speech." 530 U.S. 703, 773 (2000) (Kennedy, J., dissenting). We first note that, unlike the Colorado clinic-access law at issue in Hill, § 13(a)(2) only penalizes unprotected false speech. Second, we note that in the context of § 13(a)(2), the phrase "tends to affect" operates to limit the scope of the prohibited false speech. Finally, we note that even if the phrase "tends to affect" were found to be vague in some factual contexts, it is sufficiently clear to have put Futch on notice that providing false sales data in response to Inside FERC's monthly index survey violated the law. See Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340 (1952).

Futch argues that the term "for transmission" in the phrase "deliver for transmission" is vague. He argues that "for transmission" is vague because it must have a meaning distinct from "deliver" in order to avoid surplusage. This argument is without merit. The Universal Commercial Code defines the word "Send" as "to deposit in the mail or deliver for transmission . . . ." U.C.C. § 1-

201(b)(36)(A). In the present context, the phrase "deliver for transmission" is a synonym for "send" and is not unconstitutionally vague.

Futch finally argues that the term "commodity" is vague because it is "reasonable" to believe that natural gas is not a "commodity" under the CEA. The CEA defines "commodity" to include "all . . . goods and articles . . . in which contracts for future delivery are presently or in the future dealt in." 7 U.S.C. § 1a(4). He argues that the false natural gas sales at issue in this case did not involve a commodity because the futures contracts for natural gas that are traded on the NYMEX state that they are for gas "delivered at Henry Hub, Louisiana" and the gas in this case was delivered at "Transco Zone 6." His arguments on these points are frivolous and we reject them. Henry Hub is the nexus of several major natural gas pipelines. The Henry Hub clause in the NYMEX futures contracts merely specifies the location for gas delivery and does not in any way limit the type of commodity in question, natural gas. We also observe that Futch admitted in his plea agreement that natural gas was a commodity in interstate commerce under the CEA.

D.    Sentencing issues

Futch acknowledges that "a valid waiver of appellate rights would bar appellate review" of the sentencing issues he raises. His plea agreement states that "[d]efendant is aware that 18 U.S.C. [§] 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined."[3] The district court reviewed this provision with Futch at his rearraignment and Futch stated that he understood it. As discussed above, Futch's waiver of appeal was knowing and voluntary. His sentencing challenges are therefore foreclosed.

---

[3] The plea agreement also states that "the defendant may appeal only a sentence imposed above the statutory maximum." Futch's sentence was fifty-seven months, which is less than the statutory maximum of five years for his offense.

## IV.  CONCLUSION

We AFFIRM Futch's conviction and sentence.