In my opinion, there is only one factor that causes this case to fall within the "used in commerce or in an activity affecting commerce" part of the *Jones* test. *Jones*, 529 U.S. at 854. That factor is the use of the church building to record sermons for the express purpose of broadcasting the sermons on commercial radio stations, including a radio station located in the state of Mississippi. Radio broadcasts specifically targeted to reach people in other states represent, to my mind, classic activities affecting interstate commerce. As a result, I believe that the lead opinion is correct in concluding that a rational jury could find that the church building was used in activities affecting interstate commerce. But for this factor, however, I would have been inclined to affirm the judgment of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0418P (6th Cir.)
File Name: 02a0418p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

    *v.*                                No. 01-5632

GERALD RAYBORN,
        *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-20288—Bernice B. Donald, District Judge.

Argued: October 31, 2002

Decided and Filed: December 6, 2002

Before: MERRITT and GILMAN, Circuit Judges;
        TARNOW, District Judge.[*]

———————

**COUNSEL**

**ARGUED:** Linda F. Thome, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. A. C. Wharton, Jr., WHARTON & WHARTON

———————

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

& ASSOCIATES, Memphis, Tennessee, for Appellee. **ON BRIEF:** Linda F. Thome, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. A. C. Wharton, Jr., WHARTON & WHARTON & ASSOCIATES, Memphis, Tennessee, James D. Wilson, James R. Garts, Jr., HARRIS, SHELTON, DUNLAP. COBB & RYDER, Memphis, Tennessee, for Appellee.

MERRITT, J., delivered the opinion of the court, in which TARNOW, D. J., joined. GILMAN, J. (pp. 11-12), delivered a separate concurring opinion.

———————————

## OPINION

———————————

MERRITT, Circuit Judge. In this case, the United States appeals the order dismissing Defendant Gerald Rayborn's indictment for arson under 18 U.S.C. § 844(i). The district court found that it lacked subject matter jurisdiction over the matter because it concluded that, as applied to the circumstances of the case, § 844(i) constitutes an unconstitutional extension of Congress's commerce power. The court believed its decision was compelled by the decisions of the Supreme Court in *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000).

To the extent the district court dismissed the arson count for lack of subject matter jurisdiction, its conclusion was erroneous. The district court misconstrued language from the opinion of this court in *United States v. Sherlin*, 67 F.3d 1208, 1213-14 (6th Cir. 1995). In that case, this court contrasted § 844(i) with the Gun Free School Zones Act of 1990, the statute at issue in *United States v.Lopez*, 514 U.S. 549 (1995), noting that "[u]nlike the unconstitutional statute in *Lopez*, 18 U.S.C. § 844(i) does contain a jurisdictional element, which ensures, through proper inquiry, that the arson in question affects interstate commerce." *Id.*

———————————

## CONCURRENCE

———————————

RONALD LEE GILMAN, Circuit Judge, concurring. I agree with the lead opinion that this is a case that falls somewhere between the facts of cases like *United States v. Terry*, 257 F.3d 366 (4th Cir.) (holding that the church's operation of a day-care center was a sufficient activity affecting interstate commerce to satisfy the jurisdictional element of 18 U.S.C. § 844(i)), *cert. denied*, 122 S. Ct. 579 (2001), and of cases like *United States v. Odom*, 252 F.3d 1289 (11th Cir. 2001) (holding that donations from two out-of-state residents, purchases of Bibles and prayer books from an out-of-state source, and indirect contributions to an out-of-state church organization were insufficient to establish that the church's activities affected interstate commerce), *cert. denied*, 122 S. Ct. 1920 (2002).

Although I concur in the result reached, I write separately because I believe that the lead opinion overstates the factors that cause this case to fall within the ambit of § 844(i). In particular, the lead opinion relies on factors such as the church having out-of-state members, serving as the site for gospel concerts that occasionally feature out-of-state talent, employing two persons, collecting donations during Sunday services, purchasing food and flowers for funerals, purchasing groceries for church breakfasts and picnics, and owning several vehicles. (Lead Op. at 7) These are the kinds of "passive [or] passing" activities that both the Supreme Court and other circuits have held are insufficient to bring an arson case under § 844(i). *Jones v. United States*, 529 U.S. 848, 855 (2000); *see, e.g., Odom*, 252 F.3d at 1296-97 ("These connections to interstate commerce are too passive, too minimal and too indirect to substantially affect interstate commerce") (internal quotation marks omitted). If such activities are deemed sufficient to satisfy the jurisdictional element of § 844(i), then virtually every church arson in America will become a federal offense.

introduced evidence of the church building's direct, regular, and substantial use in activities affecting interstate commerce. We cannot say that the evidence produced by the government is not sufficient to permit a rational jury to find that the church was actively employed in commercial activities affecting interstate commerce. Indeed, while we believe the parties have stipulated to facts that could lead a trier of fact to conclude the church was used in activities affecting interstate commerce, the government has indicated that it intends to develop the record further on this point. The district court's order dismissing the defendant's indictment for arson under 18 U.S.C. § 844(i) is REVERSED.

Although the interstate commerce requirement is frequently called the "jurisdictional element," it is simply one of the essential elements of § 844(i). It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, *i.e.,* a court's constitutional or statutory power to adjudicate a case. *See United States v. Martin,* 147 F.3d 529, 531-32 (7th Cir. 1998) (citations omitted); *United States v. Rea,* 169 F.3d 1111, 1113 (8th Cir. 1999), *vacated and remanded on other grounds,* 223 F.3d 741 (8th Cir. 2000) ("Section 844(i)'s 'interstate commerce' requirement, while jurisdictional in nature, is merely an element of the offense, not a prerequisite to subject matter jurisdiction."); *United States v. Carr*, 271 F.3d 172, 178 (5th Cir. 2001).

Although this court typically vacates a dismissal order when it determines that a district court has erred in dismissing a case for lack of subject matter jurisdiction, the district court in this case undertook an evaluation of the merits of the interstate commerce question under the guise of subject matter jurisdiction. Furthermore, the facts are before the court via stipulation and the evidentiary hearing in the court below. We therefore will undertake a further consideration of the interstate commerce requirement.

Defendant Gerald Rayborn is the pastor of New Mount Sinai Missionary Baptist Church in Memphis, Tennessee. On August 25, 1998, the church building was destroyed by fire. On December 16, 1999, Rayborn was indicted in connection with the arson. Count 1 of the indictment charged a violation of 18 U.S.C. § 844(i).[1] Counts 2 and 3 charged violations of 18 U.S.C. § 1341 (mail fraud). The indictment alleged that Rayborn had set fire to the church building as part of a scheme to defraud the insurance company that held the casualty policy on the church building.

---

[1] Section 844(i) provides criminal penalties for "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."

In his motion to dismiss the § 844(i) count of the indictment, Rayborn argued (1) that the indictment was defective because the church building was not used in interstate commerce or in an activity affecting interstate commerce and (2) that Congress had exceeded its authority in enacting section 844(i). Upon recommendation of the magistrate judge, the district court initially denied the motion, finding that whether the evidence was sufficient to establish the interstate commerce element of the offense was a matter to be determined after the presentation of evidence at trial. The defendant filed a motion to reconsider and, upon reconsideration, the district court dismissed the § 844(i) count on the jurisdictional ground discussed above.

Next, the Government filed a motion to reconsider and a motion for an evidentiary hearing to establish the requisite connection to interstate commerce. The court granted the motion for an evidentiary hearing, which was held on February 7, 2001. On April 17, 2001, the district court denied the government's motion for reconsideration and the government appeals from that order.

Defendant Rayborn urges us to affirm the dismissal of the arson count from his indictment. He contends that because the church was not actively employed for a commercial purpose, § 844(i) does not apply to the present case. Defendant does not argue that churches should never be permitted to fall within the statute's ambit. Instead, Rayborn argues that to find that *this* church's activities invoke the provisions of the statute would impermissibly extend the scope of § 844(i).

In *Jones v. United States*, the Supreme Court held that § 844(i) did not reach the arson of an owner-occupied private residence. 529 U.S. 848, 859 (2000). The Court stated that the qualifying words "used in" signaled Congress's intent not "to invoke its full authority under the Commerce Clause." *Id.* at 854. The presence of a jurisdictional element in § 844(i) enabled the Court in *Jones* to avoid the constitutional

a claim of more than $89,000 to the church. 194 F.3d 657, 662 (5th Cir. 1999).

In addition, in *United States v. Odom*, 252 F.3d 1289 (11th Cir. 2001), the only evidence introduced to demonstrate use in interstate commerce included: (1) the church received donations from two out-of-state donors (relatives of the pastor); (2) use of "a handful" of Bibles and prayer books purchased from an out-of-state source; and (3) indirect contributions to an out-of-state church organization through its membership in the in-state church organization. *See id.* at 1296-97. On those facts, the Eleventh Circuit concluded that the government failed to demonstrate that the church building was used in or affected interstate commerce. *See id.* at 1297.

Finally, the Fourth Circuit in *United States v. Terry*, 257 F.3d 366 (4th Cir. 2001), considered whether the following facts constituted sufficient evidence of a church building's use in or effect on commerce: out-of-state members, church employees who receive wages for their efforts, the church's affiliation with the Cooperative Baptist Fellowship which was based in another state, the church's sponsorship of international missions, the church's purchase of Sunday School materials from an out-of-state supplier, and the church's refurbishment of homes from which it could reasonably be inferred that the church purchased building materials that impacted the national market for such goods and services. The Fourth Circuit found it unnecessary to reach that issue because it concluded that the church's operation of a full day care center necessitated a finding that the interstate commerce requirement was met. *See id.* at 369.

After reviewing the foregoing case law, we are convinced that the facts so far developed in the case at bar fall somewhere between the facts presented to the Fifth Circuit in *Johnson* and the Eleventh Circuit in *Odom* on the one hand, and the Fourth Circuit in *Terry* on the other hand. While the courts in *Johnson* and *Odom* were presented with facts indicating "merely a passive, passing, or past connection to commerce," *Jones*, 529 U.S. at 855, here the government has

public was invited. It served as the site of gospel concerts, including some featuring out-of-state talent, for which the church requested donations of $10 to $12.

Furthermore, unlike the private home in *Jones*, the church building was owned by a tax-exempt, non-profit organization with a Board of Trustees. In addition, the church employed two persons and collected substantial sums on a weekly basis, approximately $9,000 to $10,000. These funds were received from residents of Tennessee, Mississippi, and Arkansas, as well as other states.

The church also engaged in substantial activities in the local market for goods. For example, the church spent $4,700 on food and flowers for funerals in 1997, as well as $7,000 for groceries to be used to host its picnics and breakfasts. In addition, the church owned several vehicles, including a car, a truck, and a recreational vehicle.

When these facts are taken together, we conclude that the government has provided sufficient evidence to permit a rational jury to find that the church was actively employed in commercial activities with an effect on interstate commerce. While several circuits have determined that use of a building as a church alone does not qualify it as being "used in" interstate commerce, we do not believe that finding that interstate commerce is met on these facts would create a circuit split, as the defendant asserts. The cases cited by Rayborn involved factual circumstances far different from those before this court. For instance, in *United States v. Johnson*, the Fifth Circuit concluded that a church was not a building used in or affecting interstate commerce when the government asserted the following four facts: (1) the church's membership in the Texas Annual Conference (state Methodist organization); (2) the Conference's forwarding of those funds to the United Methodist Church's national office in Illinois; (3) the national organization's distribution of those funds to various missionary activities, seminaries, and institutions of higher education; and (4) an out-of-state insurer's payment of

Commerce Clause analysis mandated by *Lopez*. *See id.* at 1912.

*Jones* established a two-part inquiry to determine whether a building fits within the strictures of § 844(i). First, courts must inquire "into the function of the building itself." *Id.* at 854. Second, courts should determine whether that function "affects interstate commerce." *Id.* Because § 844(i) does not invoke Congress's full authority under the Commerce Clause, the Court explained that the qualification "'used' in an activity affecting commerce" is "most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Id.* at 855. As a result, the Court concluded that the facts asserted by the government – use of the dwelling as collateral for a mortgage from an out-of-state lender, the use of the dwelling to obtain an out-of-state insurance policy, and the use of the dwelling to receive natural gas from sources outside the state – would not bring the private home within the terms of § 844(i). *See id.*

In *Jones*, the Court also recognized that the legislation ultimately enacted as § 844(i) initially required that the building be used "for business purposes," but the qualifier was deleted in response to members who believed the statute should protect "schools, police stations, and places of worship." *Id.* at 853-54 n.5 (citing *Russell v. United States*, 471 U.S. 858, 860-61 (1985)). While § 844(i) excludes no particular type of building, the property must be "actively employ[ed] for commercial purposes." *Id.*

For purposes of the function analysis, the building's function is not limited to its primary use. Numerous court decisions support the idea that a building can have more than one function. For example, in *Jones*, the Supreme Court noted twice that the private home at issue in that case was used only as a residence and not also as a home office or in some other commercial enterprise. *See id.* at 856. Other circuits have analyzed primary and secondary functions of

church buildings. *See, e.g., United States v. Terry*, 257 F.3d 366, 369 (4th Cir. 2001).

In this case, however, the function analysis compels a conclusion that the building functioned as a church. While there were other activities in the building – such as radio broadcasts, gospel concerts, and free buffet breakfasts – none of these would support a finding that the building also served as, for example, a radio station, concert hall, or restaurant.

The conclusion that the function of the building was its use as a church does not end the inquiry. Instead, the court should turn to whether the church's activities affect interstate commerce. In *Camps Newfound/Owatonna, Inc., v. Town of Harrison*, 520 U.S. 564, 584 (1997), the Supreme Court made clear that charitable and non-profit entities are major participants in the interstate market for goods and services, using interstate communications and transportation, raising and distributing revenues (including voluntarily paid revenues) interstate. Indeed, "while churches are not commonly considered a business enterprise, churches can and do engage in commerce. The 'business' or 'commerce' of a church involves the solicitation and receipt of donations, and the provision of spiritual, social, community, educational (religious or non-religious) and other charitable services." *United States v. Odom*, 252 F.3d 1289, 1294 (11th Cir. 2001). In the Eleventh Circuit's view, the evidence proving that a church building is used in or affects interstate commerce must relate to these activities – i.e., whereby it engages in activities relating to its 'business' as a church." *Id.*

Turning then to an evaluation of the church's effects on interstate commerce, we note at the outset that unlike the private residence in *Jones*, this is not a case where the government relies only on passive activities, such as the purchase of utility services or insurance from an out-of-state provider, to demonstrate the building's use in and effect on interstate commerce. The church's interstate connections were direct, regular, and substantial. While the church's activities were undertaken primarily to facilitate worship, they

nonetheless were commercial in nature. *Accord United States v. Grassie*, 237 F.3d 1199, 1210 (10th Cir. 2001) (recognizing that a church's activities may be both religious and commercial at the same time); *Odom*, 252 F.3d 1289, 1294 (same).

In particular, the church used regular radio broadcasts as part of its evangelism; the desired effect was to increase membership and attendance at the church's worship services and other programs. Because the broadcast area included Mississippi and Arkansas, as well as Tennessee, the logical consequence of increased attendance would be increased travel into Tennessee from neighboring states. Causing interstate travel for the purpose of receiving money from the travelers affects the flow of money in commerce, even if the money is a gift. *See Camps*, 520 U.S. at 573 (stating that "the transportation of persons across state lines has long been recognized as a form of commerce," in a case where the court found that a non-profit church-affiliated summer camp was engaged in commerce in part because its out-of-state advertising prompted the transportation of campers across state lines).[2] Furthermore, the use of the radio broadcasts clearly encompasses active employment of commercial entities, including three radio stations in Tennessee and one in Mississippi. Altogether, the church paid $17,000 in 1997 to the various radio stations for its broadcasts.

Other facts support a conclusion that the building was used in interstate commerce. Because of its location, which is less than five miles to Tennessee's border with Mississippi and no more than fifteen miles to the border with Arkansas, the church drew members from Tennessee, Arkansas, and Mississippi. The church also hosted free events, to which the

---

[2] Our concurring colleague takes issue with our view that the interstate element of the crime is satisfied by causing others to travel across state lines to carry on an activity in which money changes hands. If this were good constitutional law, it would undermine the validity of the Travel Act, the Mann Act and many other federal laws, including the public accommodations provisions of the Civil Rights Act of 1964.