# United States Court of Appeals
## For the First Circuit

Nos. 03-1012
     03-1013

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ ARIEL CRUZ-RIVERA,

Defendant, Appellant.

No. 03-1014

UNITED STATES OF AMERICA,

Appellee,

v.

JULIO SANTIAGO-ADAMS,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO

[Hon. Juan Pérez-Giménez, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch, Circuit Judge, and
Lipez, Circuit Judge.

Rafael F. Castro Lang, for appellant Cruz-Rivera.

David Ramos-Pagan, for appellant Santiago-Adams.

Nelson Pérez-Sosa, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, and Sonia I. Torres-Pabón, Assistant United States Attorney, Chief, Criminal Division, were on brief, for appellee.

January 22, 2004

**LYNCH**, **Circuit Judge**.  On July 9, 1997, appellants Julio Santiago-Adams and José Ariel Cruz-Rivera, accompanied by two others, broke into the home of Carlos Flores-Rodríguez in Juana Diaz, Puerto Rico; the robbery ended with Flores-Rodríguez dead, shot seven times.  Both Santiago-Adams and Cruz-Rivera were carrying revolvers during the shooting.  The intruders took from the home $2,000 in cash, which was one day's proceeds from a Texaco gas station that Flores-Rodríguez owned.  Because of the death of its owner, the gas station was forced to close.

Both defendants pled guilty to carrying a firearm during and in relation to a robbery affecting interstate commerce and causing the death of Carlos Flores-Rodríguez.  18 U.S.C. § 924(j)(1).[1]  As to each defendant, a separate count in the indictment under the Hobbs Act, 18 U.S.C. § 1951, was dismissed.

In Santiago-Adams's plea agreement, the government agreed to recommend imprisonment at the lower end of the applicable guidelines range.  He was sentenced to 30 years imprisonment, five years supervised release, and a special monetary assessment of $100, in November 2002.  Cruz-Rivera's plea agreement allowed him to argue for a sentence of 360 months, while the government was permitted to seek a sentence of up to 516 months.  The court was

---

[1]Cruz-Rivera also pled guilty to obstructing interstate commerce in violation of 18 U.S.C. § 1951(a)(2).  This charge was based on a separate robbery with which Cruz-Rivera, but not Santiago-Adams, had been charged. Cruz-Rivera's argument on appeal is focused on the robbery of Flores-Rodríguez.

persuaded by the government and imposed a 516 month sentence in December 2002. The maximum statutory penalty available for both defendants was at least life imprisonment. See 18 U.S.C. § 924(j)(1).[2] Neither man sought to withdraw his plea before the district court.

Although saved from possible life imprisonment, the defendants were apparently unhappy with their sentences. Each appealed, launching an attack on his plea based on the limits imposed by the Commerce Clause on the reach of federal criminal statutes. See generally United States v. Lopez, 514 U.S. 549 (1995). Cruz-Rivera argues that his plea colloquy was deficient under Fed. R. Crim. P. 11 and that he did not knowingly and voluntarily enter the plea; this argument is premised on the judge's alleged failure to explain fully the interstate commerce elements of the crime. Santiago-Adams attempts to invalidate his plea by arguing that the district court did not have jurisdiction over the case because the robbery of a private house lacks a sufficient nexus to interstate commerce. Neither defendant ever presented these arguments to the district court as a basis to vacate his plea. Indeed, the court had earlier denied a motion to dismiss by Cruz-Rivera, and joined by Santiago-Adams, that was based on the alleged lack of a nexus to interstate commerce.

---

[2]The statute also authorizes the death penalty for such violations. 18 U.S.C. § 924(j)(1).

Neither defendant presents circumstances that warrant vacating his plea on appeal.

Cruz-Rivera

Because Cruz-Rivera did not move to withdraw his plea, review is for plain error. United States v. Vonn, 535 U.S. 55, 63-66 (2002); United States v. Corporan-Cuevas, 244 F.3d 199, 202 (1st Cir. 2001). There was no such error here.

We agree with Cruz-Rivera that the plea hearing, conducted before a court with a heavy criminal docket, might well have been more carefully done. Cruz-Rivera correctly points out that, at one point during the plea colloquy, the district court misdescribed the crime with which he was charged as "a robbery from a Texaco gas station in Penuelas." The court later read to Cruz-Rivera the relevant count in the indictment, but, because of the indictment's summary description of the crime, that did not fill in the gap.[3] Nor did the government, in its description of the evidence, shed much light on the facts supporting its proof of the elements of the crime. The government said that "the United States

---

[3]This language was that "on or about July 9, 1997, aided and abetted by other individuals, [Cruz-Rivera] did knowingly wrongfully, unlawfully use[] and carr[y] a firearm during and in relation to a crime of violence, which is a felony that may be prosecuted in a court of the United States and that this aiding and abetting and the carrying of the unlawful use and carrying of a firearm was done with intention to affect interstate commerce by robbery and during course of said robbery, defendants caused the death of Carlos Flores Rodriguez through the use of a firearm in violation of the laws of the United States."

would be relying on first and foremost physical evidence consisting of a fingerprint placing the defendant at the home of the victim, Carlos Flores Rodriguez . . . [and] bullet wounds actually found in the defendant that matched up with a 357 Magnum revolver." It then added only that it would also present the testimony of two cooperating witnesses, including one "who actually participated in the home invasion robbery of Carlos Flores Rodriguez and testified as to what occurred on that date."

Still, we have no doubt that the defendant was aware of the facts underlying the crime to which he pled guilty. Cruz-Rivera early on in the proceedings filed a motion to dismiss, arguing that the alleged crime lacked a sufficient nexus to interstate commerce. When the motion to dismiss was denied, he decided to plead guilty. The statement of facts attached to the plea agreement stated that Cruz-Rivera, along with Nelson Aviles-Aviles, Julio Santiago-Adams, and Hector Jimenez-Torres, had "participated in the home invasion robbery of Carlos Flores-Rodriguez at his residence in Juana Diaz, Puerto Rico." It said that the four had entered the house after Santiago-Adams forced open a bottom-floor window, that each was wearing a t-shirt over his head, and that Cruz-Rivera was carrying a magnum revolver. And it stated that the defendants took money from the residence and that during the robbery Flores-Rodriguez was shot seven times and killed. At the plea hearing, Cruz-Rivera told the court that he

-6-

had reviewed these facts and that they were accurate. Both Cruz-Rivera and his attorney told the court that they had discussed the government's evidence with each other.

Given the evidence that Cruz-Rivera understood the conduct to which he pled guilty, there was no plain error in the district court's acceptance of his guilty plea. See United States v. Ramirez-Benitez, 292 F.3d 22, 27 (1st Cir. 2002) (no plain error where the district court's description of the offense, taken in conjunction with the statement of facts attached to the plea agreement and the defendant's description of his involvement in the conspiracy, was sufficient to inform defendant of the nature of the charged offense where the offense was not complicated).

Cruz-Rivera's argument that there was plain error relies on our statement in United States v. Mack, 635 F.2d 20, 25 (1st Cir. 1980), that reading an indictment will usually not suffice to satisfy Rule 11. But the Mack court recognized that the operative question is whether the defendant understood the law in relation to the facts and that "no simple or mechanical rule" can be applied to answer this inquiry. Id. (quoting United States v. Dayton, 604 F.2d 931, 939 (5th Cir. 1979)). As such, even a simple recitation of the indictment can be sufficient to satisfy Rule 11 in less complex cases. Ramirez-Benitez, 292 F.3d at 27. There is no need to determine whether this is such a case: here, the district court did more than simply read the indictment. Cruz-Rivera told the

-7-

court that the government's statement of facts, which was attached to the plea agreement, was accurate. He also told the court that he had reviewed with his attorney the evidence in the government's possession as to the charges. The court assured itself that Cruz-Rivera understood his discussions with his attorney by questioning him extensively on the application of the sentencing guidelines to his case and on the rights that he waived by pleading guilty.

Cruz-Rivera also argues that the plea colloquy was deficient because the judge did not explain the requirement that his conduct affect interstate commerce. But nothing in Rule 11 or in the cases cited by Cruz-Rivera suggests such a bright-line rule. Rule 11 requires, in relevant part, only that the district court ensure that the defendant understands "the nature of each charge" to which he is pleading guilty. Fed. R. Crim. P. 11(b)(1)(G). It does not require the court to explain the technical intricacies of the charges in the indictment. Assuming arguendo that there could be cases in which a judge's failure to discuss the interstate commerce link renders the plea colloquy plainly deficient, this is not such a case; Cruz-Rivera understood the nature of the charge against him.

The question here is not whether the plea colloquy satisfied Rule 11, but whether it was so deficient that it affected substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. <u>See</u> <u>United</u>

States v. Savinon-Acosta, 232 F.3d 265, 268 (1st Cir. 2000).  It is clear that the answer to this question is no.  That does not mean that there were no problems with the plea colloquy.  But Cruz-Rivera is not entitled to relief based on such imperfections on a plain error standard of review.

Santiago-Adams

Santiago-Adams argues that he is entitled to de novo review because the alleged failure of the interstate commerce nexus deprived the district court of subject matter jurisdiction.  See Skwira v. United States, 344 F.3d 64, 72 (1st Cir. 2003) (the existence of subject matter jurisdiction is a question of law subject to de novo review).  But this argument confuses the constitutional limits on Congress's power with the jurisdiction of the federal courts:  whether the facts of a given case present a sufficient nexus to interstate commerce to be regulated by Congress is not an issue of the federal courts' subject matter jurisdiction.  See United States v. Rayborn, 312 F.3d 229, 231 (6th Cir. 2002) ("Although the interstate commerce requirement is frequently called the 'jurisdictional element,' it . . . is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case."); United States v. Carr, 271 F.3d 172, 178 (4th Cir. 2001); United States v. Martin, 147 F.3d 529, 531-32 (7th Cir. 1998); cf. Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d

803, 811 (1st Cir. 1988) (noting that the interstate commerce nexus is not "strictly jurisdictional"). The link to interstate commerce that is required by 18 U.S.C. § 924 is merely an element of the offense, albeit a constitutionally mandated one. See Rayborn, 312 F.3d at 231; Carr, 271 F.3d at 178. And Santiago-Adams has made no claim that the statute is facially unconstitutional.

Properly understood, Santiago-Adams's argument on appeal is that the district court did not have before it sufficient evidence of a link to interstate commerce to accept his guilty plea. But by unconditionally pleading guilty, Santiago-Adams waived this argument and cannot now advance it on appeal. See United States v. Cordero, 42 F.3d 697, 698 (1st Cir. 1994).

Even were we to apply a plain error standard of review, Santiago-Adams would still not prevail. There are significant and interesting questions about whether mere robbery from a private house of monies derived from the owner's interstate business would be sufficient to create a federal crime. Compare United States v. Diaz, 248 F.3d 1065, 1087-91 (11th Cir. 2001) (finding sufficient evidence of an affect on interstate commerce to support Hobbs Act convictions where the defendants robbed and extorted individuals who were engaged in interstate commerce), with United States v. Collins, 40 F.3d 95, 99-101 (5th Cir. 1994) (insufficient evidence to support Hobbs Act conviction where defendant robbed an individual employee of a business engaged in interstate commerce,

but no direct effects on interstate commerce were shown). The resolution of such questions will await an appropriate case. We doubt that there is any serious claim of a constitutionally insufficient interstate commerce connection where a robbery directly results in the shutting down of an interstate business. In any event, there was certainly no plain error here and it would be contrary to the interest of justice to vacate this plea.

The guilty pleas of both defendants are **<u>affirmed</u>**. So ordered.