United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 21, 2005**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 3, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 03-50478
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JANE REASOR, *a/k/a* SAN JUANITA RANGEL REASOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
_____

Before REAVLEY, JONES and DENNIS, Circuit Judges.

DENNIS, Circuit Judge.

Jane Reasor, *a/k/a* San Juanita Rangel Reasor, pleaded guilty to one count of bank fraud, twenty-eight counts of making, uttering, and possessing forged or counterfeit securities, one count of making a false statement on a credit application, and three counts of mail fraud. *See* 18 U.S.C. §§ 1344, 513(a), 1014, 1341. (1) Ms. Reasor appeals her convictions and sentences based on the twenty-eight counts of forgery of securities under 18 U.S.C. §

-1-

513(a), contending that her forgery pleas were not supported by an adequate factual basis as required by Fed. R. Crim. P. 11.[1] (2) Ms. Reasor appeals the denial of her motion to withdraw her pleas of guilty to the entire indictment, and the calculation of her sentences under the Federal Sentencing Guidelines based on alleged improper loss calculations, an ex post facto application of a sentencing enhancement, and *United States v. Booker*, 125 S.Ct. 738 (2005). We affirm in part, vacate in part, and remand for further proceedings. Ms. Reasor's convictions of bank fraud, making a false statement on a credit application, and three counts of mail fraud are affirmed. Ms. Reasor's convictions and sentences based on her guilty pleas to forgery of securities under 18 U.S.C. § 513(a) are vacated, and the case is remanded for further proceedings on the forgery counts. Ms. Reasor's remaining sentences are vacated and the case is remanded to the district court for re-sentencing.

## I. Forgery Convictions Under 18 U.S.C. § 513(a)

### A. Crime Definition

It is a federal crime under 18 U.S.C. § 513(a) to (1) make, utter or possess (2) a counterfeit security (3) of an organization (4) with intent to deceive (5) another person, organization, or government. For this purpose, § 513(c) defines "organization" as "<u>a legal entity</u>, other than a government, established or organized

---

[1] *See* Fed. R. Crim. P. 11(b)(3).

for any purpose, and includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, society, union or other association of persons <u>which operates in or the activities of which affect interstate or foreign commerce</u>." This case presents the question of whether the factual basis of Ms. Reasor's guilty plea to twenty-eight counts of forgery under § 513(a) sufficiently established that at the relevant times the entity whose securities she allegedly forged was an "organization," i.e., an entity which "operat[ed] in or the activities of which affect[ed] interstate or foreign commerce." *Id.*

### B. Subject Matter Jurisdiction

Initially, Ms. Reasor raised an argument that the district court did not have subject matter jurisdiction over these counts but she has conceded that it did in her reply brief.[2] We agree that the district court had subject matter jurisdiction. The prosecution of Ms. Reasor under 18 U.S.C. § 513 is a case arising under the laws of the United States.[3] More specifically it is a case involving a federal crime, over which federal district courts have jurisdiction pursuant to 18 U.S.C. § 3231. Analogously, this

---

[2] Ms. Reasor initially claimed that the district court did not have subject matter jurisdiction over those charges. She now concedes jurisdiction, but continues to assert that the district court improperly accepted her guilty pleas.

[3] U.S. Const. art. III, § 2 cl. 1.

Court has ruled, in a Hobbs Act case, that an element can be jurisdictional in nature without affecting the jurisdiction of the court to adjudicate the case. *United States v. Robinson*, 119 F.2d 1205, 1212 n.4 (5th Cir. 1997). Also, in the context of a federal arson prosecution, this Court has held that the interstate commerce requirement is an element of that crime and not a prerequisite to subject matter jurisdiction. *United States v. Johnson*, 194 F.3d 657, 659 (5th Cir. 1999) *vacated and remanded for consideration in light of Jones v. United States*, 529 U.S. 848 (2000) by *United States v. Johnson*, 530 U.S. 1201 (2000), *reinstated by U.S. v. Johnson*, 246 F.3d 749 (5th Cir. 2001); *accord United States v. Rayborn,* 312 F.3d 229, 231 (6th Cir. 2002); *United States v. Rea,* 169 F.3d 1111,1113 (8th Cir. 1999), *vacated on other grounds*, 223 F.3d 741 (8th Cir. 2000); *United States v. Martin*, 147 F.3d 529, 531-32 (7th Cir. 1998). We see no indication in § 513 that Congress intended for the statute's interstate commerce nexus requirement to serve any other purpose in the crime definition than as an essential element of the crime.[4]

---

[4] We note that the Ninth Circuit has held otherwise in two published opinions. *United States v. Nukida*, 8 F.3d 665 (9th Cir. 1993)(holding that the interstate commerce nexus requirement in 18 U.S.C. § 1365(a) (tampering with a consumer product) is both an element of the offense and a requirement affecting the subject matter jurisdiction of the court intertwined together such that the issue must be resolved by the jury); *United States v. Barone*, 71 F.3d 1442, 1444 n.4 (9th Cir. 1995)(applying the holding in

And, as touched on above, the Commerce Clause, found in Article I of the United States Constitution, implies limits on the power of Congress to regulate, not on the Article III federal courts' power to adjudicate.[5] Thus, it is logical to infer that in drafting § 513, Congress included the interstate commerce nexus to ensure that it was acting within its legislative power and not as a limit on the judicial power of the courts to hear cases under the statute.

C. Indictment, Guilty Pleas, and Factual Basis

A federal grand jury returned an indictment charging, in counts two through twenty-nine, that Ms. Reasor did knowingly make, utter and possess "forged securities, that is checks, of an organization, namely, St. Dominic's Catholic Church, San Antonio, Texas," wherein she altered, completed, signed and endorsed checks, "said checks drawn on Church bank accounts with intent to deceive

---

*Nukida* to § 513). We must respectfully disagree. Neither *Barone* nor *Nukida* explains why the essential interstate commerce nexus element of the crime should be read to double as a prerequisite to judicial jurisdiction in the absence of any plain words to this effect. The language and structure of the statute indicate that the requirement is merely an element of the crime. 18 U.S.C. § 513.

[5]It is the courts that have the power to determine whether Congress has exceeded the powers granted it under the Commerce Clause. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 299 (1803).

another person or organization....all in violation of Title 18, United States Code, Section 513(a)."  Each count listed a check of the Church, each with a different check number, for a specific amount made payable to a specifically named payee, "drawn on Norwest Bank, San Antonio, Texas, account # 0230110916."

Ms. Reasor entered guilty pleas to the twenty-eight counts of forgery.  At the time of the guilty pleas, the government made an oral statement of a factual basis for the pleas.  Prior to the district court's acceptance of the pleas, Ms. Reasor's counsel, without making a formal objection, informed the court that there might be legal defenses to these counts. Subsequently, Ms. Reasor filed a motion to withdraw her guilty pleas to the forgery charges stating as one of the grounds that the government "articulated no facts on the record which would have shown that either St. Dominic's Catholic Church, or the Archdiocese of San Antonio, was an organization in interstate commerce."  The district court denied Ms. Reasor's motion to withdraw her pleas of guilty.

D. Church as Organization that Operates in or Conducts Activities that Affect Interstate Commerce

A district court cannot enter a judgment of conviction based on a guilty plea unless it is satisfied that there is a factual basis for the plea. Fed. R. Crim. P. 11(f).  "The purpose underlying this rule is to protect a defendant who may plead with

an understanding of the nature of the charge, but 'without realizing that his conduct does not actually fall within the definition of the crime charged.'" *Johnson*, 194 F.3d at 659. Therefore, "[t]his factual basis must appear in the record . . . and must be sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal." *United States v. Oberski*, 734 F.2d 1030, 1031 (5th Cir. 1984); *Accord Johnson*, 194 F.3d at 659; *United States v. Armstrong*, 951 F.2d 626, 629 (5th Cir. 1992); *United States v. Spruill*, 292 F.3d 207, 215 (5th Cir. 2002).

A guilty plea does not waive the right of a defendant to appeal a district court's finding of a factual basis for the plea on the ground that the facts set forth in the record do not constitute a federal crime. *Johnson,* 194 F.3d at 659; *Spruill,* 292 F.3d at 215. In general, we regard a district court's acceptance of a guilty plea as a factual finding that we review under the clearly erroneous standard. *Johnson*, 194 F.3d at 659 (citing *United States v. Rivas*, 85 F.3d 193, 194 (5th Cir. 1996). Because Ms. Reasor objected to the sufficiency of the factual basis for her pleas of guilty to forgery in the district court, we review her argument that the district court erred in this regard under that standard. *See Johnson*, 194 F.3d at 660; *United States v. Bredimus*, 352 F.3d 200, 204 (5th Cir. 2003).

Applying the standard to the record in this case, we conclude that the factual basis does not support Ms. Reasor's guilty pleas to the federal crime charged in the indictment, namely, forging or counterfeiting securities of an "organization," that is, an entity which operates in or the activities of which affect interstate or foreign commerce. 18 U.S.C. § 513(c).[6]  The factual basis provided

[6] The interstate commerce element of § 513 is markedly different from that contained in many other federal crime statutes. "The phrasing of the jurisdictional element of § 513 stands in clear contrast to the language Congress used in defining a number of other federal crimes, which base federal jurisdiction on the interstate effects of the *offense conduct*." *United States v. Barone*, 71 F.3d 1442, 1445 (9th Cir. 1995). Instead, § 513 requires proof that the forged  securities were those of an organization which was operating in or whose activities were affecting interstate commerce. "By drafting the statute in this manner instead of using the broader language included in other statutes, Congress evinced a clear intent that the organization whose securities are forged, and not just the forgery, be in or affecting commerce." *Id.*
    Also, in *Jones,* a prosecution involving the arson of an owner-occupied private residence, the Supreme Court analyzed the arson statute which reads, in pertinent part, "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned . . . ." *Jones v. United States*, 529 U.S. 848 (2000); 18 U.S.C.A. § 844.  In *Jones*, the Court rejected the government's argument that this language should be read broadly as invoking the full reach of the commerce clause. *Jones*, 529 U.S. at 854.  The Supreme Court disagreed noting that the statute contained the qualifying words "used in" and found that the proper inquiry "is into the function of the building itself, and then a determination of whether that function affects interstate commerce." *Id.* at 854-55 (citing *United States v. Ryan,* 9 F.3d 660, 675 (8th Cir. 1993) Consequently, the proper inquiry in Ms. Reasor's case is into the "operations" and "activities" of the "organization" whose securities the defendant

-8-

by the government is not sufficiently specific to demonstrate that St. Dominic's Church operated in or affected interstate commerce. As a general rule, a church is not a commercial entity which operates in or conducts activities that affect interstate commerce. That is not to say that a church's activities may never affect interstate commerce, but only that the operations and activities of a church are not intrinsically in or affecting interstate commerce. *See United States v. Terry*, 257 F.3d 366, 369 (4th Cir. 2001); *Rayborn*, 312 F.3d 229.

In the present case, the factual basis does not contain any statement of specific, concrete facts from which it could be inferred that the church's operations and activities either were in or affecting interstate commerce. On the contrary, the facts stated tend to confirm that St. Dominic's operations were typical of a church and not similar to those of a commercial enterprise affecting interstate commerce. The only references to specific activities of the church in the factual basis provided were that, "[t]he evidence would show that St. Dominic's Catholic Church is just one of many churches that has limited resources. It doesn't

---

is charged with forging or counterfeiting, and then into whether those operations or activities were in or affecting interstate commerce. Thus, unlike the statutes which require that the *offense conduct* itself affect commerce, in both the arson statute, § 844(i), and the forgery statute, § 513, the interstate commerce element is removed from and must be charged and proved separately from the criminal act of arson or forgery.

employ a controller, it doesn't have a business office . . . " and that the church's bank accounts were insured by the Federal Deposit Insurance Corporation. The only other statements in the record that the church had connections to interstate commerce were made in argument by the government in its response to a motion to dismiss for lack of federal subject matter jurisdiction. The prosecutor argued that the role of the church is "to go forth and serve the Lord" and so is not limited by geographic boundaries, and that, accordingly, the church received donations from out of town parishioners, made purchases from out of state vendors, and some of the church's bank accounts were serviced in other states. These facts show that St. Dominic's operations and activities were typical of churches in general, most if not all of which have accounts in banks insured by the FDIC, purchase some goods from out of state vendors, and receive some donations from out of state donors.

Although there appear to be no reported cases construing § 513(a)'s interstate commerce element in connection with the forgery of a church's securities, we often have examined the somewhat similar requirement that a church building must be "used in" interstate commerce or in "an activity affecting interstate commerce" in order for its arson to constitute a federal crime under 18 U.S.C. § 844(i). For example, in *Johnson*, a case

involving the adequacy of the factual basis for a guilty plea under § 844(i), the government relied on four facts to show the church building's connections to interstate commerce. 194 F.3d 657. The government alleged that (1) the church was a member of a statewide conference to which it annually contributed funds (2) the conference forwarded those funds to a national denomination (3) the national organization distributed those funds to various missionary activities, seminaries, and institutions of higher education, and (4) an out-of-state insurer paid the church's claim for more than $89,000. *Id.* at 662. Thus, the government alleged substantially more specific facts to show an interstate commerce nexus in *Johnson* than in the meager factual basis advanced for Ms. Reasor's pleas. Yet this Court vacated Johnson's guilty plea, finding that the factual basis was not sufficient to establish the interstate commerce element of § 844(i). *Id.* at 662-63.

The relationship between church building use and interstate commerce in an arson case was also considered by the Eleventh Circuit in *United States v. Odom*, 252 F.3d 1289 (11th Cir. 2001). At trial the government submitted evidence that the church (1) received donations from two out-of-state donors (relatives of the pastor), (2) used "a handful" of bibles and prayer books purchased from an out-of-state supplier, and (3) made indirect contributions to an out-of-state church organization through its membership in an

-11-

in-state church organization. *Id.* at 1292-93. The Eleventh Circuit found these facts, though more detailed and specific than a conclusory statement, insufficient to support a jury's finding of the requisite interstate nexus. *Id.* The purchase of goods from an out-of-state supplier was insufficient, even in combination with specific information about the receipt of out-of-state donations. *Id.* Although the facts of out-of-state purchases and the receipt of out-of-state donations in *Odom* were more specific than those in the government's factual basis in Ms. Reasor's case they were still insufficient.

Two recent decisions upholding federal arson convictions illustrate the nature and extent of specific facts required to demonstrate a sufficient interstate commerce nexus with church building use. In *Rayborn*, the Sixth Circuit found a sufficient interstate commerce nexus where, inter alia, the church building was used to record sermons that were regularly broadcast on commercial radio stations in two states. 312 F.3d 229. Additionally, the broadcasts were used to carry on interstate evangelism, attracting travelers from other states to worship and make donations at the church building in question. *Id.* at 234. Other significant factors were that the church (1) was located less than five miles from the state border, (2) employed two people, (3) received weekly collections of substantial sums from residents of

-12-

other states, (4) made substantial purchases of goods in the local market, and (5) owned several vehicles. *Id.* at 234–35. The concurring judge found a sufficient nexus in the use of the church building to record sermons for broadcast on commercial radio stations, including a station located in Mississippi. He deemed the other facts, without the broadcasts, to be insufficient. *Id.* at 236 (J. Gilman concurring). In *Terry*, the Fourth Circuit found a sufficient nexus between interstate commerce and the use of a church building for the operation of a day care center. 257 F.3d at 369. Use of a building for interstate radio broadcasts or for the business of operating a day care center is plainly use of the building in interstate commerce or in activities affecting interstate commerce. Thus, *Rayborn* and *Terry* demonstrate the kind and degree of factual specificity and concreteness required to show an interstate nexus with church building use. Substantially more is needed than ordinary church building use to prove a federal arson case. Correspondingly, substantially more of this kind of factual specificity and concreteness was required in Ms. Reasor's case to demonstrate a nexus between the church's operations or activities and interstate commerce.

The Supreme Court, in another somewhat analogous situation, held that "an owner-occupied residence not used for any commercial purpose does not qualify as property 'used in' commerce or

-13-

commerce-affecting activity; arson of such a dwelling, therefore, is not subject to federal prosecution under § 844(i)." *Jones v. United States*, 529 U.S. 848, 852 (2000). In *Jones*, the Court concluded that the "Indiana dwelling [use] involved there was not within § 844(i) notwithstanding that it was used by the owner as collateral for a mortgage from an Oklahoma lender and by the lender as security for that loan, was insured by a Wisconsin insurance policy protecting both the owner and the lender, and used natural gas from outside Indiana." *United States v. Johnson*, 246 F.3d 749, 751 (5th Cir. 2001). The *Jones* Court held that § 844(i) required more, viz. "active employment for commercial purposes," and noted that the owner "did not use the residence in any trade or business." *Id.* (quoting *Jones*, 529 U.S. at 1910).

Similarly, therefore, under § 513(a), a church not having operations in or activities affecting interstate commerce is not an "organization" so as to subject a forger of its securities to federal prosecution under § 513(a).[7] Just as the government's arson cases failed in the foregoing instances, the government's

---

[7] In light of *Jones*, this Circuit in *Johnson*, 246 F.3d at 752, reconsidered and reaffirmed its previous decision in *United States v. Johnson*, 194 F.3d 657 (5th Cir. 1999), concluding that the factual basis for the plea as shown by the record did not suffice to show that at the relevant time the church building in Johnson was being actually employed for commercial purposes as to be within the terms of § 844(i). *Id*. at 752 (citing *United States v. Rea*, 233 F.3d 741 (8th Cir. 2000)).

guilty plea conviction of Ms. Reasor fails here because the factual basis does not demonstrate that the church whose securities she is charged with counterfeiting was an organization whose operations were in interstate commerce or commerce-affecting activity.

"Notwithstanding an unconditional plea of guilty, we will reverse on direct appeal where the factual basis for the plea as shown of record fails to establish an element of the offense of conviction." *Spruill*, 292 F.3d at 215 (quoting *United States v. White*, 258 F.3d 374, 380 (5th Cir. 2001); *see United States v. Baymon*, 312 F.3d 725 (5th Cir. 2002)(same); *Johnson*, 246 F.3d 749. Because the factual basis presented to the district court fails to establish the essential interstate commerce element of 18 U.S.C. § 513(a) we must vacate the convictions of Ms. Reasor under this statute.

### E. Bank as Organization

Significantly, even the government does not contend that the facts asserted in the record were sufficient to establish a nexus between interstate commerce and the church's operations or activities. Instead, the government now argues, for the first time in this case, that we must read the indictment and the factual basis as if she were charged with forging securities of Norwest Bank. In this way, the government suggests, its miscues below

won't matter because the bank can stand in as the organization in interstate commerce.

The short answer is that the government did not make this argument in the district court and therefore may not raise it for the first time on appeal. Furthermore, even if we were to consider the argument, it is without merit.

The Government can not use the appellate courts to reconstruct a new record for its losing case. An appellate court reviews the district court finding that there was a factual basis for a guilty plea according to a clear error standard. *Compare U.S. v. Hall*, 110 F.3d 1155, 1162 (5th Cir. 1997) *with United States v. Briggs*, 920 F.2d 287, 294-295 (5th Cir. 1991). Consequently, the function of a court of appeals in such a review does not allow it to amend or alter the record presented to the district court.

Further, the argument that the Government would raise here for the first time is based on two false premises: first, that the deficiency in its indictment and factual basis can be disregarded as a harmless variance in proof from the terms of the indictment; and, second, that *United States v. Chappell*, 6 F.3d 1095 (5th Cir. 1993) supports this argument.

Neither the courts nor the prosecutor may change the charge in the indictment put forward by the grand jury, because the Fifth Amendment guarantees that no person shall be held to answer for a

capital or infamous crime unless on presentment or indictment of a grand jury.[8] If it were within the power of a court to change the charging part of an indictment to suit its own notions the great importance that the common law and the Constitution attach to an indictment by a grand jury "may be frittered away until its value is almost destroyed." *Ex parte Bain*, 121 U.S. 1, 10 (1887).

This court continues to adhere to these principles and to the rules or tests set down by the Supreme Court in *Stirone v. United States*, 361 U.S. 212 (1962).

> "Stirone requires that courts distinguish between constructive amendments of the indictment, which are reversible per se, and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged [in the indictment]....In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment."

*United States v. Chambers*, 2005 WL 995671 (5th Cir. 2005)(quoting *United States v. Adams*, 778 F.2d 1117, 1123 (5th Cir. 1985).

---

[8] *See* 1 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 127 (2d ed. 1984) (citing, inter alia, *Stirone v. United States*, 361 U.S. 212 (1960); *Ex parte Bain*, 121 U.S. 1 (1887); *Russell v. U.S.*, 369 U.S. 749 (1962)).

Consequently, only a grand jury can amend an indictment to broaden it; and such broadening need not be explicit to constitute reversible error, but may be implicit or constructive. *See United States v. Doucet*, 994 F.2d 169, 172 (5th Cir. 1993). An implicit or constructive amendment of the indictment, constituting reversible error, occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged. *See Chambers*, 2005 WL 995671 (reversing a conviction for being a felon in possession of ammunition, where the indictment charged possession of whole ammunition "in or affecting commerce" and the jury was allowed to convict based on the travel of component parts, rather than the whole, of the ammunition in interstate commerce); *Adams,* 778 F.2d at 1123 (reversing a conviction for making a false statement and providing false identification in connection with the purchase of a firearm, where the indictment charged Adams with using a false name, but the jury was allowed to convict based on his use of a false address); *United States v. Salinas,* 601 F.2d 1279, 1287-91 (5th Cir. 1979)(reversing a conviction for misapplication of bank funds where the indictment charged that the defendant was a bank director, but the jury was allowed to convict if it found that he

was an officer, director, agent, or employee); *United States v. Salinas*, 654 F.2d 319, 324 (5th Cir. 1981)(reversing a conviction for aiding and abetting the misapplication of bank funds where the indictment charged that the defendant aided and abetted a named officer where the jury was allowed to convict on proof that he aided and abetted a different officer); *Doucet*, 994 F.2d at 172 (reversing a conviction for possession of an unregistered firearm modified to fire as a machine gun, where the indictment charged possession of the modified gun and the jury was allowed to convict on possession of the unassembled component parts); *See, e.g., United States v. Nunez*, 180 F.3d 227 (5th Cir. 1999).

The Reasor indictment plainly charged that Ms. Reasor forged securities of St. Dominic's Catholic Church, an organization in or affecting interstate commerce, in order to mislead and defraud the victim of her scheme. Construing the indictment and the factual basis as the government now urges would drastically alter the indictment's charges of the crimes that Ms. Reasor was held to answer for. Those constructive amendments would arbitrarily recast the bank in the role of the securities owner so that the bank, not the church, would become the organization whose operations are alleged to impact interstate commerce.

As we said in *Doucet*, however, "an indictment is not putty in the government's hands." 994 F.2d at 173. Neither this court nor

the district court can permit the government to constructively amend the indictment after the record has been made so as to fit the proof it offered below. Had the district court done so, it would be our duty to reverse its judgment as clear error. Hence, we cannot countenance an argument by the government that calls upon us to do that which we would be bound to set aside.

The government unprofitably invokes *Chappell* in a futile effort to show that the factual basis in this case supports the interstate commerce elements contained in the indictment and the statute, § 513(a). 6 F.3d 1095. In *Chappell*, the defendants were convicted of, inter alia, § 513(a) violations by their conspiracy to cash counterfeit Mississippi Power and Light (MPL) payroll checks drawn on Trustmark National Bank at Wal-Mart stores and other supermarkets. *Chappell*, 6 F.3d at 1097. On appeal, the defendants argued that the evidence was not sufficient to support their convictions and that the indictment should have been dismissed because it lacked specificity. *Id*. at 1098-99. But *Chappell* is inapposite because the court's opinion does not describe or discuss the indictment and its charges in any detail. *Id*. Apparently, because of very general pleadings in the indictment, the court's interpretation of the terms of the statute, or the defendants' lack of ability, or all of those factors, the defendants were unable to raise the issue of variance of proof or

constructive amendment of the indictment except in a very narrow respect, viz., their objection to the government's closing argument depicting Trustmark as the ultimate victim. *Id.*

The *Chappell* court held that the evidence was sufficient because:(1) Trustmark, the bank on which the checks were drawn, was plainly in interstate commerce; (2) The checks were securities of both the bank, Trustmark, and MP&L, the company on whose accounts the checks were forged or counterfeited; (3) Thus, it is was not material that the government failed to prove that MP&L was an "organization" under § 513; (4) Because the deceived victims were individuals, viz., the store clerks who cashed the checks, they were "persons" with respect to whom the statute does not require proof of any relationship to interstate commerce. *Chappell*, 6 F.3d at 1098-99.

The *Chappell* defendants' principal attack on the indictment seems to have been its alleged lack of specificity regarding the identity of the victims and their relationship with interstate commerce. *Id.* at 1099.[9] The court rejected the defendant's motion to dismiss the indictment because the defendants were not entitled to have the indictment dismissed because of its lack of specificity

_____

[9] The defendants made a very limited argument that the government constructively amended the indictment by arguing in closing that Trustmark would have been the ultimate victim of the defendants' fraud if it had succeeded. *Chappell*, 6 F.3d at 1099. The court rejected this argument without assigning reasons. *Id.*

as to the identity of the victims and their connection to interstate commerce. *Id.* at 1099-1100. The indictment was specific enough because it charged the essential elements permitting defendants to prepare a defense. *Id.* Further, although the court did not specifically make the connection here, it earlier concluded that the jury reasonably could have found that the victims were the individual store clerks who were "persons" under § 513. *Id.* at 1098.

The other cases upon which the government relies, *United States v. Wade*, 266 F.3d 574 (6th Cir. 2001) and *United States v. Jackson*, 155 F.3d 942, 945-46 (8th Cir. 1998) are distinguishable because the indictments in those cases charged the defendants using broad general terms similar to the provisions of § 513(a).

In *Wade*, the defendant argued both that the evidence was insufficient to convict him under § 513(a) and that a reversible constructive amendment had occurred. 226 F.3d 574. The *Wade* indictment charged the defendant with violations of § 513(a) largely in generic terms. *Id.* Wade was thus alleged to have made and possessed "counterfeit securities of an organization with intent to deceive and defraud other persons and organizations . . . ." *Id.* The counterfeit checks were drawn upon accounts at Key Bank and Metropolitan Bank, which were named in the indictment. *Id.* at 582, 583, n. 2. The court, in effect, held that the checks were

securities of the banks and that the banks were inherently "organizations" for § 513(a) purposes, and concluded that "[b]ecause the checks...purported to be drawn on accounts at Key Bank and Metropolitan Bank, real entities that are organizations under 18 U.S.C. § 513(c)(4), there was sufficient evidence to convict Wade under Counts 17, 18 and 20." *Id.* at 582 (citing *Chappell*). The court in *Wade* found "it doubtful that Wade's complaints even rise to the level of a variance . . . . The checks . . . listed . . . the names of the banks on their face. Thus, the evidence at trial proved that the checks listed in the indictment counts were counterfeit securities of an organization." *Id.* at 583.

In *Jackson,* the defendant was convicted of, inter alia, conspiracy to possess or utter counterfeit securities under § 513. 155 F.3d 942. On appeal the defendant argued that the Government had failed to prove that the object of the alleged conspiracy was to violate § 513. *Jackson*, 155 F.3d at 944. The defendant contended that the government's case depended on whether a bank can be an "organization" as referred to in § 513. Jackson, 155 F.3d at 946. The court held that it could, saying it agreed with the reasoning in *Chappell*. *Jackson*, 155 F.3d at 946 (citing *Chappell*, 6 F.3d at 1099. ("[S]ection 513 does not expressly or impliedly state that a document may be a security of only one person.")

There is no conflict between the cases relied upon by the Government and our determination in Ms. Reasor's case that the factual basis is not sufficient to support her guilty plea conviction to the § 513 forgery charges in the indictment. The major distinctions are: (1) In Reasor, the factual basis does not support a finding of the essential interstate commerce element as it was charged in the indictment, while in *Chappell*, *et al.*, the evidence was sufficient to support the jury's finding of every essential element of the § 513 offenses charged. (2) In Ms. Reasor's case, the indictment is written in very specific terms. Ms. Reasor was charged with forgery of the securities of the St. Dominic's Church, an organization for purposes of § 513 in order to deceive and defraud the Norwest Bank. In *Wade* and *Jackson* the indictment was written in broad generic terms closely tracking the statute. Thus, the government in the latter cases was afforded the freedom of proving the elements of the crime in alternative ways; whereas the Reasor indictment provided but one factual pattern which the government was required to satisfy in the factual basis. *Chappell* did not argue with any effort that there was a constructive amendment of the indictment in his case. Moreover, the court's opinion does not describe or discuss the indictment so as to give us a basis for comparison.

In sum, Ms. Reasor showed that the factual basis was insufficient as to an essential element of the crime charged. *Chappell*, *Wade* and *Jackson* were unable to demonstrate insufficiency of evidence as to any essential element of the crime charged in their indictments.  The authorities cited by the government do not conflict with the circuit precedents upon which we have relied and give us no reason to abandon our analysis or our disposition.

For these reasons we reject all of the Government's arguments *on this point* as being without merit.

## II. Denial of Motion to Withdraw Pleas of Guilty

Ms. Reasor seeks reversal of all of her convictions, alleging that her guilty pleas were not voluntary, as they were coerced by the trial judge, and that they were obtained in violation of Federal Rule of Criminal Procedure 11.  A plea must be voluntary and intelligent to be valid.  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  Furthermore, Federal Rule of Criminal Procedure 11(c)(1) prohibits the court from "participat[ing] in any discussions between the parties concerning any such plea agreement." *United States v. Rodriguez*, 197 F.3d 156, 158 (5th Cir. 1999).[10]  This Court reviews the validity of guilty pleas de novo.  *United States*

---

[10] Federal Rule of Criminal Procedure 11 was amended in 2002, moving this restriction on the trial court from 11(e)(1)(c) to 11(C)(1), but the relevant amendment did not change the law. Fed. R. Crim. P. 11 advisory committee's note.

*v. Busto-Useche*, 273 F.3d 622, 625 (5th Cir. 2001). However, by the express terms of the statute, Rule 11 violations are subject to harmless error analysis. Fed. R. Crim. P. 11(h); *United States v. Miles*, 10 F.3d 1135, 1140-41 (5th Cir. 1993).

Ms. Reasor alleges that the trial court's entry of sanctions against her for the cost of unnecessarily assembling a jury venire, refusal to accept a plea to anything but the entire indictment, and statement that if she were found guilty she would be taken into custody pending sentencing were coercive and an improper involvement of the trial court in the plea negotiation process. The government responds that this series of events occurred on the day the matter was scheduled to go to trial following months of discovery and negotiations, allowing Ms. Reasor plenty of time to reach a plea agreement with the government. The government further points out that while there was no real plea agreement, Ms. Reasor intended to plead guilty to most of the counts of the indictment anyway. Further, the government argues that Ms. Reasor was not at risk of paying for the cost of an unnecessary jury venire in the event she chose to stand trial. Thus, that risk could not have coerced her to plead guilty.

Prior to the plea hearing, Ms. Reasor indicated to the court in writing her intent to plead guilty to the bank fraud count and many of the § 513 counts. Therefore she cannot claim that those

pleas were coerced by conduct of the trial court judge at the plea hearing.  In addition, the § 513 convictions will be vacated by this opinion, making any question of the validity of the pleas to these counts moot.  Thus, only the pleas to one count of making a false statement on a credit application and three counts of mail fraud are at issue.  *See* 18 U.S.C. §§ 1014, 1341.

While the conduct of Ms. Reasor's plea hearing was hardly ideal, we find that Ms. Reasor's pleas were voluntary. We do not condone the imposition of sanctions on late pleading criminal defendants for the costs of bringing in a jury.  However, under the particular circumstances of this case, the district court's rescinded sanction tended to encourage Ms. Reasor to go to trial, not to plead guilty.  Therefore, this threatened sanction could not have rendered Ms. Reasor's plea involuntary.  Further, Ms. Reasor admits that the district court judge was fully within his rights to detain her if she were found guilty at trial.  Even if we were to agree with Ms. Reasor that the court's statement of its intention to order Ms. Reasor taken into custody in the event of a guilty verdict was ill-timed, we decline to find that, under the circumstances, the court's statement was so coercive as to render Ms. Reasor's plea involuntary.

As for any violation of Federal Rule of Criminal Procedure 11's prohibition on judicial involvement in the plea negotiation process, it is not clear that there was a plea negotiation process

in which to interfere.  The transcript of the plea hearing records defense counsel's own declaration that there was "not actually an agreement," but that her client wanted to resolve the case through a guilty plea or pleas.  This hearing took place on the scheduled trial date and both parties declared their readiness to go to trial that day. No discussion between the prosecutor and the defendant's counsel was ongoing as they had failed to reach an agreement.  It seems the plea negotiation window had closed.[11]  As there was no ongoing plea negotiation, Rule 11's prohibition does not apply and these convictions are affirmed.

### III. Sentencing

As the guidelines group offenses like these for purposes of calculating offense level the vacated convictions should affect the calculation of all thirty-three of Ms. Reasor's forty-two-month concurrent sentences. *See* former U.S.S.G. §2F.1.1 (1998). In addition, the application of former U.S.S.G §2F1.1(b)(5)(c)(I) of the 2000 version of the Sentencing Guidelines to Ms. Reasor's sentences violated the Ex Post Facto Clause.  The ex post facto violation is clear and conceded by the government. Ms. Reasor

---

[11] In fact, the judge had set an earlier deadline for notifying the court of any plea agreement and that date had come and gone without agreement.

should be re-sentenced with consideration given to the appropriate version of the guidelines.[12]

## IV. Conclusion

Ms. Reasor's convictions of bank fraud, making a false statement on a credit application, and three counts of mail fraud are AFFIRMED. Ms. Reasor's convictions and sentences for forgery under 18 U.S.C. § 513(a) are VACATED. Ms. Reasor's other sentences are VACATED. The case is remanded to the district court for further proceedings, including recalculation and re-sentencing in accordance with this opinion.

---

[12] Ms. Reasor also asserted error in the loss calculation used in determining the applicable sentencing range under the guidelines. Because we remand for re-sentencing this issue is not yet ripe. Ms. Reasor has also raised claims under *Blakely v. Washington*, 124 S.Ct. 2531 (2004) and now *United States v. Booker,* 125 S.Ct. 738 (2005). As we are vacating Ms. Reasor's sentences these claims are moot. Re-sentencing, of course, will take place in accord with *Booker*.